Fabricant, J.
The petitioner is in the custody of the Sheriff of Suffolk County, held on a Governor’s warrant, issued upon request of the Governor of North Carolina, for extradition to North Carolina for the purpose of prosecution on an indictment for first *441degree murder.1 Before the Court is the petitioner’s petition for release from custody, challenging the validity of the Governor’s warrant.
I. The Applicable Standard.
Art. IV, §2, cl. 2 of the United States Constitution provides: “A person charged in any state with treason, felony, or other crime, who shall flee from justice, and be found in another state, shall on demand of the executive authority of the state from which he fled, be delivered up to be removed to the state having jurisdiction of the crime.” The purpose of this clause is “to enable each state to bring offenders to trial as swiftly as possible in the state where the alleged offense was committed.” Hinnant petitioner, 424 Mass. 900, 904 (1997), quoting Michigan v. Doran, 439 U.S. 282, 287 (1978).
In accord with that purpose, a state in which a fugitive is found “has an obligation to deliver, without any reference to the character of the crime charged, or to the policy or laws of the State to which the fugitive has fled.” A Juvenile, petitioner, 396 Mass. 116, 119 (1985), citing Kentucky v. Dennison, 65 U.S. (24 How.) 66, 103 (1861). An alleged fugitive may challenge the propriety of extradition by petitioning for release, but “habeas corpus is not the proper proceeding to try the question of alibi, or any question as to the guilt or innocence of the accused.” Munsey v. Clough, 196 U.S. 364, 374 (1905). “[D]efenses cannot be entertained .. . but must be referred for investigation to the trial of the case in the courts of the demanding state.” Germain, Petitioner, 258 Mass. 289, 295 (1927). Nor is the asylum state free to determine whether probable cause exists for the prosecution; rather, the asylum state is “bound to accept the demanding State’s judicial determination that probable cause exists since the proceedings of the demanding State are accorded a presumption of regularity.” A Juvenile, petitioner, 396 Mass. at 120, citing Michigan v. Doran, 439 U. S. at 290.
To effectuate the constitutional provision and its implementing federal statute, 18 U.S.C. §3182 (1970), both Massachusetts and North Carolina have adopted the Uniform Criminal Extradition Act (“UCEA”), codified in Massachusetts as G.L.c. 276, §§11-20R. Under that statute, extradition is a “summary procedure,” with “clear limits on the scope of judicial review.” Hinnant, petitioner, 424 Mass. at 905. “Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive.” Id., quoting Michigan v. Doran, 439 U.S. at 289.
A warrant issued under the UCEA “is prima facie evidence, ‘at least, that all necessary legal prerequisites have been complied with, and, if the previous proceedings appear to be regular, is conclusive evidence of the right to remove the prisoner to the state from which he fled.’ ” Baker, petitioner, 310 Mass. 724, 728 (1942) (citations omitted). The governor’s issuance of the warrant is in itself “sufficient to justify the removal, until the presumption in favor of the legality and regularity of the warrant is overthrown by contrary proof in a legal proceeding to review the action of the governor.” Munsey v. Clough, 196 U.S. at 372. “A petitioner for a writ of habeas corpus who is held as a fugitive from justice has the burden of making it clearly and satisfactorily to appear that he is not a fugitive from justice within the meaning of the Constitution and laws of the United States.” Id. at 730.
However,"[t]he burden of proving that the petitioner!] [is] the person!] charged and to be surrendered is on the respondent." A Juvenile, petitioner, 396 Mass. at 121, citing Baker, petitioner, 310 Mass. at 731. Where the papers in themselves reveal identity of names, “the inference which may be drawn from identity of names combined with slight additional evidence is sufficient to establish identity.” A Juvenile, at 121. Where, as here, the names differ, no such inference arises, and the respondent must establish identity by other means. See Moore, petitioner, 2 Mass.App.Ct. 399, 403 (1974), citing Baker, supra at 731.
The respondent may meet his burden of proving identity in a variety of ways, and in doing so is not limited to evidence of the sort that would be admissible in a criminal trial. See, e.g., A Juvenile, petitioner, 396 Mass. at 122 (“photographs of the petitioners authenticated by affidavits of witnesses to the crime with which the petitioners are charged”); Carvalho, petitioner, 10 Mass.App.Ct. 824, 825 (1980) (testimony of arresting officers to statements of petitioner upon arrest that were exculpatory as to crime charged, but inculpatory as to identity); Hamel, petitioner, 8 Mass.App.Ct. 877, 877 (1979) (photographs and statements to arresting officer); see also Maldonado, petitioner, 364 Mass. 359, 362 (1973) (comparing extradition to probable cause hearing for procedural purposes); Ger-main, petitioner, 258 Mass, at 295 (in reviewing executive decision to issue warrant, court “does not try the whole question anew according to strict rules of evidence and all other procedural limitations”).
2. The Proceedings, Evidence, and Findings in this Case.
In this case, the papers submitted consist of (1) the warrant issued by the Governor of Massachusetts on March 28, 2001, for the arrest and return of “Torrie McKinley Davis, aka Torri”; (2) the-demand of the Governor of North Carolina dated January 23, 2001, for the arrest of Torrie McKinley Davis; and (3) the application of the District Attorney for the Eighteenth District of North Carolina, dated January 17, 2001, for requisition of Torrie McKinley Davis. The District Attorney’s application recites that the subject was *442indicted for first degree murder by the grand jury for Guilford County, North Carolina, on January 16, 2001; that the alleged crime was committed in that county; and that “said subject was personally and physically present in Greensboro, Guilford County, North Carolina, at the time of the commission of the alleged crime, and thereafter the subject fled the State of North Carolina to avoid arrest and prosecution.”
These papers on their face meet the formal requirements of the statute. In the absence of contrary evidence, the papers establish, sufficiently for purposes of this proceeding, that Torrie McKinley Davis stands charged with the crime of murder in North Carolina, and is a fugitive from justice in that state. The only question remaining is whether the petitioner before this Court is Torrie McKinley Davis, the person named in the extradition papers.
Appended to the warrant is an arrest record from the Kinston, North Carolina, Police Department, bearing identifying number 1114, reflecting the arrest on April 23, 1993, of Torri McKinley Davis, described as a black male, with brown eyes, height of 5’ 10," weight of 160 pounds, and a scar at the right corner of his eye brow. This record reflects that Torri McKinley Davis was born in Lenoir County, North Carolina, on March 20, 1977, and at the time of the arrest had an address of 604 E. Highland Avenue, Kinston. Under “M.O. or other info,” the document provides the number “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.” The arrest record includes a full set of fingerprints of Torri McKinley Davis. Also appended to the warrant are two other documents bearing the name of Torri McKinley Davis. One of these is captioned “PCIBASE PRISONER CONTROL RECORD JCA: 98 — 026626,” and contains a photograph of the person identified. This document spells the name as “Torri Mickenly Davis,” but gives the same date and place of birth, height, and weight, as the Kinston Police Department record, and provides a social security number matching the number listed on that record as “M.O. or other info.” The home address noted is 602E Highland Avenue, Kinston, North Carolina. The document also notes a scar on the left arm. The other document attached appears to be a photocopy of a wanted poster, indicating that “Tori McKinley Davis,” described as “black male, DOB 3-20-77, 5’8,” 125 lbs.," is wanted for murder. The poster bears a photograph, consistent with but not the same as the one on the PCI record; this photograph shows Kinston Police Department identifying number 1114, with additional numbers that appear to'be a date of August 22, in a year that is illegible.
Although discrepancies and minor inconsistencies appear with respect to spelling of the name, street address, height and weight, in light of the presumption of regularity due to the Governor’s determination to issue the warrant, these papers suffice to show that the person who is under indictment for murder in North Carolina is the same person who is the subject of the 1993 Kinston, North Carolina, arrest record.
These papers provide no information, however, to indicate that the petitioner before the Court is that person.2 To fill that gap, the Commonwealth has provided the affidavit of Boston Police Detective Sharon Wong, with appended exhibits consisting of the Kinston, North Carolina record, and the record of the petitioner’s arrest by the Boston Police Department on December 10, 2000. The Boston Police Department record gives the subject’s date of birth as 03/04/1978, and his height and weight as 5’ 8," 180 lbs. The Boston record also includes a photocopy of a photograph that is consistent with the North Carolina photographs, as well as with the appearance of the petitioner in the courtroom at the hearing on this petition.
Wong’s affidavit establishes that she has substantial training and experience in fingerprint identification. She recites that she compared the fingerprints of Torrie McKinley Davis, as they appear on the Kinston, North Carolina arrest record, with those of the petitioner as they appear in the Boston Police Department arrest record, and concluded that “all the fingers shown are identical with respect to the loops, arches and whorls of each finger.” On this basis, she opines that the fingerprints of Torrie McKinley Davis and the petitioner “are one and the same.”
Wong’s opinion, in the absence of any contrary evidence, establishes that the petitioner is the person named in the warrant. As the petitioner points out, Wong does not indicate the number of markers she compared, or the number she considered necessary to draw a conclusion. Nevertheless, her expertise, as established in her affidavit, suffices to give her opinion both credibility and weight. Accordingly, the Court finds, by a preponderance of the credible evidence, that the petitioner is the person named in the warrant.3
3. The Death Penalty Issues.
The petitioner points out that the crime for which he is indicted is subject to the death penalty under North Carolina law. He argues, citing Commonwealth v. Colon Cruz, 393 Mass. 150 (1984), and earlier cases, that the death penalty violates the Massachusetts constitution. The petitioner also offers evidence, in the form of an affidavit of Professor James Coleman of Duke University Law School, that a North Carolina legislative commission has found that the death penalty as currently administered in North Carolina “is flawed, unjust, and likely racially discriminatory,” and includes “sentencing innocent people and people with mental retardation to death, and sending people to death row because of racial bias, incompetent defense counsel, prosecutorial misconduct, and arbitrariness.” On this basis, the petitioner contends that the Massachusetts constitution prohibits any action by this Court, including enforcement of the Governor’s *443warrant, to facilitate imposition of the death penalty. He urges the Court to “inform the Governor that she is obligated under the Massachusetts constitution to receive assurances that the death penalty will not be sought by the state of North Carolina” against the petitioner, and to condition enforcement of the warrant on the Governor’s obtaining such assurances.
The authorities cited supra preclude this Court from acting as the petitioner urges. Assuming that Massachusetts constitutional law is as the petitioner argues, it is superceded by the mandate of Art. IV, §2, cl. 2 of the United States Constitution, with which the Commonwealth is required to comply. Moreover, if the United States Constitution would permit the Governor of the Commonwealth to negotiate with the Governor of North Carolina in the manner proposed, any attempt by this Court to compel the Governor to do so would violate Article 30 of the Massachusetts Constitution. “The decision, whether the requisition of the demanding Governor ought to be honored, is executive in nature and is conferred upon the Governor of this Commonwealth as its chief executive . . . ‘[F]or whatever he does officially, the Governor shall answer only to his own conscience, to the people who elected him, and in case of the possible commission of a high crime or misdemeanor, to a court of impeachment.’ ” Germain, petitioner, 258 Mass. at 293, quoting Rice v. Governor, 207 Mass. 577, 580. Accordingly, the petition for release must be denied.
The petitioner has requested an order staying his return to North Carolina pending appeal of this ruling. Although the Court cannot conclude that the petitioner has a likelihood of success on appeal, the Court recognizes that the petitioner’s return to North Carolina will effectively deprive him of any opportunity for appellate review of this ruling. Accordingly, the Court will order that the petitioner’s return be stayed for a period of one week from the date of entry of judgment denying his petition, so as to afford the petitioner an opportunity to seek a further stay from an appellate court.
CONCLUSION AND ORDER
For the reasons stated, the Petition for Release from Confinement is DENIED, and it is hereby ordered that JUDGMENT enter dismissing the petition. It is further order that the petitioner’s return to North Carolina shall be stayed for a period of one week from the date of entry of judgment in this action.

 The petitioner is also charged with certain criminal offenses in Massachusetts, including armed robbery. It appears that the Massachusetts offenses were the occasion for his arrest by the Boston Police Department on December 10, 2000.

 The photocopies of the photographs appearing on the papers are consistent with the appearance of the petitioner in the courtroom, but are not of sufficient quality to support identification in themselves.

 Neither party has directed the Court’s attention to any authority delineating the standard of proof applicable to the issue of identity, and the Court has found none. Although the cases discussed supra might tend to suggest a relatively low standard, such as probable cause, the Court assumes, for purposes of this case, that the standard is preponderance of the evidence, and applies that standard.