COMMONWEALTH VS. JOSE TORRES.

Essex. March 4, 2004. - April 20, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Bail. Due Process of Law,* Competency to stand trial.

This court concluded that it is generally permissible to proceed with a bail
hearing pursuant to G. L. c. 276, § 57, in a case where the defendant has
been found incompetent to stand trial, in the absence of circumstances that
suggest that, because of that incompetency, the judge will be unable to
obtain adequate information to make a reliable bail determination.
[501-507]

INDICTMENTS found and returned in the Superior Court Department on December 20, 2000.

A question of law was reported to the Appeals Court by *Peter W. Agnes, Jr.,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Catherine Langevin Semel,* Assistant District Attorney, for the Commonwealth.

*David M. Skeels,* Committee for Public Counsel Services, for the defendant.

CORDY, J. In this case, we are asked to determine whether, consistent with G. L. c. 276, § 57, and principles of due process, a judge in the Superior Court may conduct a bail hearing for a defendant found incompetent to stand trial. We conclude that, as a general rule, the judge may.

1. *Background.* On January 4, 2001, Jose Torres was arraigned on charges of rape of a child and indecent assault and battery on a child under the age of fourteen years. Although Torres's counsel stated at the arraignment that Torres had clinical depression and may be "slow," no competency examination was ordered. Bail was set at $50,000 surety or $5,000 cash, and the defendant posted bail and was released. At a subsequent hearing

on May 1, 2001, Torres's counsel expressed reservations about Torres's competency to stand trial, and the judge ordered a competency evaluation pursuant to G. L. c. 123, § 15 (*a*).

A series of evaluations and temporary periods of commitment followed, *culminating in a competency hearing before another judge in the Superior Court on February 3, 2003.* At that hearing, Dr. John Von Gilmore, Jr., testified that Torres was mildly mentally retarded and suffered from schizoaffective disorder, a mental illness characterized by vulnerability to depression and psychotic symptoms including auditory and visual hallucinations. Although Torres was able to control the symptoms of schizo-affective disorder with medication, his mental retardation is an incurable condition. Dr. Gilmore testified that Torres's mental retardation rendered him unable to understand several legal concepts, including confessions, juries, the right to remain silent, and the right to counsel; however, Torres could understand the nature of the court proceedings generally, would take the advice of his attorney, and might understand a plea bargain. Dr. Gilmore also testified that Torres does not cope well with stress and risked losing competence over the course of a long trial. On the basis of Torres's inability to understand legal concepts and his vulnerability to stress, the judge found him incompetent to stand trial.

The Commonwealth then petitioned for the civil commitment of Torres under G. L. c. 123, § 16 (*c*). After a hearing in March, 2003, a District Court judge determined that Torres did not pose a substantial risk of harm to himself or others by reason of mental illness and therefore was not subject to commitment. See G. L. c. 123, § 16 (*c*) (authorizing commitment under G. L. c. 123, § 8).[1] The Commonwealth then sought review of Torres's initial bail order, contending that Torres had become a flight risk because he was no longer competent to stand trial but not under an order of commitment.

---

[1] General Laws c. 123, § 8 (*a*), provides that a "district court . . . shall not order the commitment of a person . . . unless it finds after a hearing that (1) such person is mentally ill, and (2) the discharge of such person from a facility would create a likelihood of serious harm." General Laws c. 123, § 1, defines "[l]ikelihood of serious harm" as "(1) a substantial risk of physical harm to the person himself . . . (2) a substantial risk of physical harm to other persons . . . (3) a very substantial risk of physical impairment or injury to the person himself."

At the hearing on the Commonwealth's motion to review the bail order, the judge questioned, sua sponte, whether a bail hearing could be held for a defendant found incompetent to stand trial. After argument, the judge determined that such a hearing could not be held because it violated Torres's statutory right to participate in such a hearing and his constitutional right to due process. However, because the case raised an important and doubtful question of law, the judge reported the following question to the Appeals Court, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979):

> "Is it permissible to conduct a bail hearing under G. L. c. 276, § 57, in circumstances in which the Commonwealth seeks an order increasing the amount of bail, when the defendant is incompetent and unable to assist his lawyer in his defense?"

We transferred the case to this court on our own motion.

2. *Discussion.* The statute authorizing a judge in the Superior Court to set bail, G. L. c. 276, § 57, provides in relevant part:

> "A justice of the . . . superior court . . . may inquire into the case and admit [a] prisoner or witness to bail if he determines that such release will reasonably assure the appearance of the person before the court and will not endanger the safety of any other person or the community . . . ."

While this section of the bail statute makes no mention of a bail hearing or a defendant's right to participate in such a hearing,[2] it has long been the law in the Commonwealth that a "defendant is entitled to a reasonable opportunity to be heard on the matter of bail and to be represented by counsel at such a hearing." *Matter of Troy,* 364 Mass. 15, 29-30 (1973).[3] This practice is consistent with principles of due process embodied in art. 12 of the Massachusetts Declaration of Rights and the Fourteenth

---

[2]Cf. G. L. c. 276, § 58 ("A justice or clerk or assistant clerk of the district court, a bail commissioner or master in chancery . . . shall . . . hold a hearing in which the defendant and his counsel, if any, may participate . . .").

[3]Cf. Mass. R. Crim. P. 8, as appearing in 397 Mass. 1226 (1986) ("If a defendant charged with a crime for which a sentence of imprisonment . . . may be imposed initially appears in any court without counsel, the judge shall

Amendment to the United States Constitution. See *Coleman* v. *Alabama*, 399 U.S. 1, 9 (1970) (opinion of Brennan, J.) (preliminary hearing at which defendant held over for prosecution and bail is set is "critical stage" at which defendant entitled to counsel); *Commonwealth* v. *Priestley*, 419 Mass. 678, 682 n.5 (1995) ("The opportunity to be admitted to bail protects an arrestee's liberty interest"); *McClain* v. *Swenson*, 435 F.2d 327, 330 (8th Cir. 1970) ("*Coleman* [v. *Alabama, supra,*] stands for the proposition that a preliminary hearing is a critical stage and that counsel is essential at that proceeding to protect the accused against any erroneous or improper prosecution and [to make] arguments on such matters as bail and the possibility of a psychiatric examination"). We do not perceive that there is a statutory bar to conducting a bail hearing for a defendant found incompetent to stand trial, beyond what those same due process principles would require.

"Minimum due process varies with context." *Spence* v. *Gormley*, 387 Mass. 258, 274 (1982). It is "not a technical conception with a fixed content," *Cafeteria & Restaurant Workers Union, Local 473* v. *McElroy*, 367 U.S. 886, 895 (1961), quoting *Joint Anti-Fascist Comm.* v. *McGrath*, 341 U.S. 123, 162-163 (1951) (Frankfurter, J., concurring), but a "flexible" concept that "calls for such procedural protections as the particular situation demands," *Mathews* v. *Eldridge*, 424 U.S. 319, 334 (1976), quoting *Morrissey* v. *Brewer*, 408 U.S. 471, 481 (1972). Nevertheless, three distinct factors guide our analysis where, as here, government action affects a protected liberty interest:[4]

> "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative

follow the procedures established in G. L. c. 211D and in Supreme Judicial Court Rule 3:10").

[4] The right to be free from confinement prior to trial is a protected liberty interest. See, e.g., *Aime* v. *Commonwealth*, 414 Mass. 667, 677 (1993), quoting *Foucha* v. *Louisiana*, 504 U.S. 71, 83 (1992) ("Federal constitutional jurisprudence firmly establishes the rule that 'in our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception' ").

burdens that the additional or substitute procedural require-
ment would entail."

*Spence* v. *Gormley, supra,* quoting *Mathews* v. *Eldridge, supra*
at 335.

Both the private and governmental interests at stake in a bail
proceeding are significant. A defendant faces a clear deprivation
of his right to be free from restraint pending trial. See *Aime* v.
*Commonwealth,* 414 Mass. 667, 676-677 (1993). While, in most
cases, "[i]f a defendant is held pending trial, the consequences
to him, although significant, are temporary," *Querubin* v. *Com-
monwealth,* 440 Mass. 108, 118 (2003), a defendant's incapac-
ity to stand trial makes his interest in avoiding error at a bail
hearing even more important than that of a defendant who is
merely held pending a certain speedy trial. Counterbalancing
this interest is the Commonwealth's substantial interest in
"secur[ing] the presence of a defendant at trial to ensure that, if
the defendant is guilty, justice will be served." *Id.* at 113. Ac-
cord *Bell* v. *Wolfish,* 441 U.S. 520, 534 (1979) ("Government
has a substantial interest in ensuring that persons accused of
crimes are available for trials and, ultimately, for service of
their sentences, [and] confinement of such persons pending trial
is a legitimate means of furthering that interest").[5]

We thus turn to the third factor to be considered, the risk of
an erroneous deprivation of a defendant's liberty interest. In
essence, we must determine how likely it is that a defendant's
incompetence to stand trial will result in his bail being set
at a meaningfully higher level than it would be if he were

[5]Torres contends that the Commonwealth's interest in this case is largely
theoretical, because the defendant is incompetent to stand trial and unlikely to
regain competence. However, the evidence in this case suggests that, while
Torres's mental retardation cannot be cured, his current understanding of the
nature of the justice system and the charges against him is substantial, such
that there is a real possibility that he could be found competent to stand trial
at a later time. Assuming that the Commonwealth could demonstrate a strong
risk of flight, it has a substantial interest in ensuring that whatever bail (or
other condition of release) is set be adequate to ensure Torres's appearance in
the event — however probable — of a trial. Cf. *Paquette* v. *Commonwealth,*
440 Mass. 121, 125-126 (2003), cert. denied, 540 U.S. 1150 (2004) (recogniz-
ing Commonwealth's strong interest in assuring defendant's presence in event
of trial); *Querubin* v. *Commonwealth,* 440 Mass. 108, 118 (2003) (same).

competent.[6] Torres argues that his inability fully to assist his counsel at the bail hearing creates an unacceptably high risk of error. Thus, the specific nature of the inquiry undertaken at a bail hearing, as well as the extent and nature of the incompetency, are relevant considerations in the due process analysis.

With respect to the nature of the inquiry, the factors that a judge is to consider when conducting a bail hearing are "(1) the nature and circumstances of the offense charged, (2) the accused's family ties, (3) his financial resources, (4) his length of residence in the community, (5) his character and mental condition, (6) his record of convictions and appearances at court proceedings or of any previous flight to avoid prosecution or (7) any failure to appear at any court proceedings." *Querubin* v. *Commonwealth, supra* at 115 n.6, quoting Reporters' Notes to Mass. R. Crim. P. 6, Mass. Ann. Laws, Rules of Criminal Procedure 61 (LexisNexis 1997). As the enumeration of these "familiar, straightforward, and relatively simple" factors makes clear, "[t]he inquiry at a bail proceeding under § 57 where the only issue is the amount of bail that will reasonably assure the defendant's presence at trial involves the presentation of evidence that, in the vast majority of cases, is undisputed, a matter of public record, or readily explained." *Querubin* v. *Commonwealth, supra* at 118. While a defendant able fully to assist in his own defense might be better at providing information about these factors, an attorney working on his behalf should, in almost every case, be able to ascertain the relevant information and present it to the court with little difficulty. As we have recognized, the limited and fact-specific nature of the inquiry at a bail hearing renders some procedural protections unnecessary as a matter of due process. See *id.* (due process does not require "full-blown evidentiary hearing that includes

[6]On a defendant's initial appearance in court (after arrest or summons), regardless of his competency to stand trial and his understanding of the proceedings, the judge must in fact make some decision with respect to the defendant's status. If the issue of competency is apparent, the defendant can be examined and then temporarily committed for further evaluation. See G. L. c. 123, § 15 (*a*) and (*b*). If it is not, the defendant must be released or held on bail as a matter of practical and procedural necessity. The issue presented in this case, of course, is the holding of a bail hearing after those initial decisions regarding the defendant have been made and he has been found incompetent to stand trial.

the right to present and cross-examine witnesses"). Correspondingly, the risk of error resulting from a defendant's inability fully to assist his counsel in presenting his own defense is lower.[7]

ᵕ With regard to the extent and nature of the incompetency, the risk of error is further mitigated where the defendant is not completely unable to assist his counsel in obtaining the information necessary for his representation at the bail hearing. Incompetency to stand trial does not equate to the complete inability to communicate basic information to counsel on a narrow range of fact-specific issues. In the present case, for example, the record indicates that Torres is able to understand the nature of court proceedings generally, and would take the advice of his counsel as a person in a position of authority. This stands in sharp contrast to the defendant in *Hinnant, petitioner*, 424 Mass. 900 (1997), the case on which the judge relied in concluding that he could not hold a bail hearing for Torres.[8] In the *Hinnant* case, the Commonwealth sought to conduct rendition proceedings against a defendant who, as the result of a closed head injury, was literally unable to communicate with counsel.[9] *Id.* at 908. We remanded the case for "a determination whether [the petitioner] is presently competent to understand

[7]An attorney working on the defendant's behalf, who has already represented him through the lengthy and rigorous process of examination, assessment, and hearing on the issues of competency and commitment, will, in almost every case, be able to ascertain and present to the court information with respect to most, if not all, of the bail factors with little difficulty.

[8]In *Hinnant, petitioner*, 424 Mass. 900, 902 (1997), we mentioned in passing that a "District Court judge released Hinnant on bail." The propriety of conducting a bail hearing for a defendant suffering even Hinnant's degree of incompetency was apparently not raised as an issue in that case.

[9]In *Hinnant, petitioner, supra* at 908-909, we distinguished *Romeo* v. *Roache*, 820 F.2d 540 (1st Cir. 1987), a case involving a person found incompetent who nonetheless had some ability to communicate:

"[T]he court in *Romeo* noted that 'we are not presented here with a claim that petitioner is catatonic, has lost all contact with reality, or is totally unable to communicate, and we do not decide how we would view a due process argument were a severe claim of that sort presented.' *Id.* at 544. Hinnant is not able to communicate with his lawyer and is unable to comprehend the charges against him; he presents just such a claim."

the nature of the rendition proceedings." *Id.* at 910. Central to the holding was our determination that "an evaluation of [the petitioner] in Massachusetts indicates that he may not be competent to comprehend *even the narrow issues that arise in a rendition proceeding*" (emphasis added).[10] *Id.* In sharp contrast to the petitioner in the *Hinnant* case, Torres is not so completely unable to understand the proceedings that he can be of absolutely no assistance to his attorney. Torres's ability, however limited, to communicate with his attorney about the proceedings reduces the risk of error posed by conducting a bail hearing in his case. We expect that this would be the case in almost every instance where a defendant was found to be incompetent to stand trial, but of sufficiently sound judgment so as not to be a danger to himself or others.

Torres contends finally that the Supreme Court's decision in *Jackson* v. *Indiana*, 406 U.S. 715 (1972), eviscerates any legitimate interest the Commonwealth might otherwise have in holding a bail hearing, because it forbids the indefinite commitment of an incompetent defendant "solely on account of his incompetency to stand trial." *Id.* at 731. The *Jackson* decision is not dispositive of whether a bail hearing can constitutionally be held in these circumstances. Indeed it would only become relevant in the event that such a hearing concluded in the setting of a bail that the defendant could not meet, resulting in his prolonged detention. The issue presented in this case is not whether a hypothetical increase in bail (and consequent incarceration) would violate due process; it is whether conducting the hearing itself would constitute such a violation. A bail hearing could easily result in a change to existing conditions of release or amount of bail without running afoul of the *Jackson* case. Moreover, the Commonwealth's interest in having a bail hearing is significant even if the *Jackson* case prohibits Torres's indefinite pretrial confinement.

In sum, taking into account the risk of error, the balance between a defendant's interest and the Commonwealth's inter-

---

[10]Although the issues at a rendition hearing may be narrow, they nonetheless involve the strategically important issue whether to waive the hearing. See G. L. c. 276, § 20J. Nothing akin to such a decision ordinarily occurs at a bail hearing.

est favors the Commonwealth. Conducting a bail hearing for a defendant found incompetent to stand trial does not per se violate that defendant's due process rights.[11] While each case may require some assessment by the hearing judge of whether the defendant's mental condition prevents any meaningful communication with counsel, such that the court will be unable to obtain the information necessary to set a proper bail, the procedural history of the case, including the reports of competency and (where applicable) the record of any civil commitment proceedings, along with information provided by the defendant and counsel for the Commonwealth, should ordinarily provide an adequate basis on which to make such an assessment without the need for further expert examination or testimony. That same information augmented by the argument of counsel ought also to be adequate and sufficiently reliable for the purpose of setting bail. In this case, the record of Torres's competency proceeding readily supports the conclusion that conducting a bail hearing would not violate his due process rights.

3. *Conclusion.* In answer to the reported question, it is generally permissible to proceed with a bail hearing pursuant to G. L. c. 276, § 57, in a case where the defendant has been found incompetent to stand trial, in the absence of circumstances that suggest that, because of that incompetency, the judge will be unable to obtain adequate information to make a reliable bail determination. The case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[11]It is worth noting that persons found incompetent to stand trial may still be subject to a variety of complex court proceedings, including commitment as a sexually dangerous person, G. L. c. 123A, § 1 (enumerating, among those who can be proceeded against as "[s]exually dangerous person," person who has been "charged with a sexual offense and was determined to be incompetent to stand trial and who suffers from mental abnormality or personality disorder which makes such person likely to engage in sexual offenses if not confined to a secure facility"); and civil commitment, G. L. c. 123, §§ 7 and 8. Cf. *Commonwealth* v. *Hatch*, 438 Mass. 618, 626 (2003) (rejecting suggestion that defendant should not be allowed to call witnesses at a "defense on the merits" hearing pursuant to G. L. c. 123, § 17 [*b*], because he is incompetent and therefore unable to assist in his own defense).