NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12860

IN THE MATTER OF A JUVENILE.


        Suffolk.      March 3, 2020. - October 1, 2020.

    Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
                    & Kafker, JJ.[1]


Juvenile Court.  Incompetent Person.  Practice, Criminal,
     Juvenile delinquency proceeding, Defendant's competency,
     Transfer hearing, Stay of proceedings, Dismissal.  Due
     Process of Law, Juvenile delinquency proceeding, Competency
     to stand trial.




     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on September 3, 2019.

     The case was reported by Kafker, J.


     Robert F. Hennessy for the defendant.
     Tara L. Johnston, Assistant District Attorney, for the
Commonwealth.
     Sarah Spofford, Committee for Public Counsel Services, for
youth advocacy division of the Committee for Public Counsel
Services & others, amici curiae, submitted a brief.


_____

     [1] Chief Justice Gants participated in the deliberation on
this case and authored this opinion prior to his death.

GANTS, C.J.  The issue in this case is whether due process permits a Juvenile Court judge to conduct a transfer hearing pursuant to G. L. c. 119, § 72A, where the defendant, now an adult, is incompetent to stand trial for a crime allegedly committed as a juvenile.  We conclude that it does not and that a transfer hearing may be conducted only if and when the defendant becomes competent to stand trial.  We further conclude that if the defendant indefinitely continues to be incompetent to stand trial, due process requires that the charges be dismissed at the time the defendant would have become eligible for parole if, after the issuance of a criminal complaint, he were convicted of the most serious crime charged and received the maximum sentence.[2]

Background.  1.  Statutory background.  General Laws c. 119, § 72A, establishes the procedure for prosecuting a defendant who allegedly committed a crime as a juvenile but was apprehended after his or her nineteenth birthday.  The statute provides in relevant part:

> "If a person commits an offense or violation prior to his eighteenth birthday, and is not apprehended until after his nineteenth birthday, the court, after a hearing, shall determine whether there is probable cause to believe that said person committed the offense charged, and shall, in its discretion, either order that the person be discharged,

---

[2] We acknowledge the amicus brief submitted by the Committee for Public Counsel Services, Citizens for Juvenile Justice, the Mental Health Legal Advisors Committee, and the Massachusetts Association of Criminal Defense Lawyers.

> if satisfied that such discharge is consistent with the protection of the public; or, if the court is of the opinion that the interests of the public require that such person be tried for such offense or violation instead of being discharged, the court shall dismiss the delinquency complaint and cause a criminal complaint to be issued. . . . Said hearing shall be held prior to, and separate from, any trial on the merits of the charges alleged."

"[T]he purpose of § 72A is, in part, to give the Juvenile Court jurisdiction over cases where a juvenile offender is not apprehended until after his [nineteenth] birthday, and if public interest requires, transfer the case to the Superior Court," where the defendant may be prosecuted for criminal acts that he or she committed as a juvenile. See Commonwealth v. Nanny, 462 Mass. 798, 804 (2012).

During a § 72A transfer hearing, a Juvenile Court judge must make two determinations. The first is whether there is probable cause to believe that the defendant committed the charged offense. G. L. c. 119, § 72A. If the judge concludes that there is probable cause, the second determination is whether the defendant should be tried as an adult on the criminal charge or be discharged, thereby ending the prosecution. Id. "[I]f the court is of the opinion that the interests of the public require that such person be tried for such offense or violation," the judge shall dismiss the juvenile complaint and transfer the defendant to the jurisdiction of the District Court, the Boston Municipal Court, or the Superior

Court.  Id.  See Nanny, 462 Mass. at 799 (if Juvenile Court judge transfers case, it "then proceeds in accordance with the ordinary course of criminal proceedings").  If the judge concludes that "discharge is consistent with the protection of the public," the judge shall discharge the defendant.  G. L. c. 119, § 72A.  The judge's decision is entirely discretionary, requiring "consideration of the specific crime and the particular defendant."  J.H. v. Commonwealth, 479 Mass. 285, 290 (2018).  See Commonwealth v. Davis, 56 Mass. App. Ct. 410, 415 (2002) (there are no "specific evidentiary considerations to guide the ultimate decision" in § 72A transfer hearing).

2.  Facts and procedural background.  In January 2018, the Seekonk police department received a referral from the Department of Children and Families regarding an alleged series of sexual assaults.  The complainant claimed that the defendant had sexually assaulted her on multiple occasions between August 2009 and October 2011, when the two lived together in a foster home.  At the time of these alleged assaults, the defendant was a juvenile, thirteen to fifteen years old; the complainant was ten to eleven years old.  Due to the delay in disclosure by the complainant, the defendant was a twenty-one year old adult when the delinquency complaint was brought.

On March 5, 2018, the defendant was arrested on a warrant; arraigned in the Juvenile Court on charges of indecent assault

and battery on a child under fourteen, G. L. c. 265, § 13B, and indecent assault and battery on a mentally disabled person, G. L. c. 265, § 13F; and released on personal recognizance, with an order to stay away from the alleged victim. At the time of his arrest, the defendant was living at a short-term residential facility operated by the Department of Mental Health. Based on concerns about the defendant's competency to stand trial, the Juvenile Court judge ordered an outpatient evaluation pursuant to G. L. c. 123, § 15 (a).

The first evaluation, completed by a forensic psychologist retained by defense counsel, found that the defendant "suffer[ed] from a substantial disorder of mood, thought and perception that grossly impair[ed] his judgment, behavior, and capacity to recognize reality." The forensic psychologist also noted that the defendant possessed "a rudimentary understanding of some aspects of his case" but demonstrated "substantial impairment in his rational understanding of the legal proceedings and his ability to assist counsel in his defense, including making reasoned decisions about his case." Ultimately, the forensic psychologist concluded that the defendant was not competent to stand trial.

The second evaluation was conducted by a Juvenile Court clinician, who also concluded that the defendant was not competent to stand trial. Although the clinician determined

that the defendant had "sufficient ability to rationally consult with defense counsel," she noted her concerns that he would not be able to withstand the stress of trial given his "historic difficulties with remaining calm and present for brief hearings."

Following these evaluations, the Juvenile Court judge declared the defendant legally incompetent to stand trial. The Commonwealth then requested a § 72A transfer hearing. The defendant moved to stay the hearing, and the Juvenile Court judge denied the motion without a hearing. The defendant then petitioned a single justice of this court for extraordinary relief pursuant to G. L. c. 211, § 3. The single justice reserved and reported the matter to the full court.

Discussion. 1. Due process rights of an incompetent defendant. "Due process under both the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights prohibits the prosecution from proceeding to trial against a criminal defendant or juvenile who has been found incompetent to stand trial." Abbott A. v. Commonwealth, 458 Mass. 24, 27 (2010), citing Drope v. Missouri, 420 U.S. 162, 171 (1975), and Commonwealth v. Robidoux, 450 Mass. 144, 152 (2007). See White v. Estelle, 459 U.S. 1118, 1121 (1983) (Marshall, J., dissenting) ("Due process forbids a State to try or convict a defendant who is incompetent to stand trial"). A

person accused of a crime is incompetent to stand trial where he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." Commonwealth v. Prater, 420 Mass. 569, 573 (1995), quoting Drope, supra. See Abbott A., supra, quoting Commonwealth v. L'Abbe, 421 Mass. 262, 266 (1995).

This prohibition helps to protect the accuracy and reliability of criminal and delinquency proceedings by ensuring that criminal defendants and juveniles have the ability and opportunity to communicate information to others that may reveal their innocence or lessen their degree of guilt. See Drope, 420 U.S. at 171. See also 4 W. Blackstone, Commentaries *24-25. It also safeguards other constitutional rights, "including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify on one's own behalf or to remain silent without penalty for doing so" (citation omitted). Cooper v. Oklahoma, 517 U.S. 348, 354 (1996). Essential to the competency determination, therefore, is whether the defendant or juvenile has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." Commonwealth v. Vailes, 360 Mass. 522, 524 (1971), quoting Dusky v. United States, 362 U.S. 402, 402 (1960).

The trial is the pivotal truth-seeking event, so the capacity of the defendant or juvenile to communicate and assist counsel at that stage in the proceedings is a cornerstone of due process. See Drope, 420 U.S. at 171-172 ("the prohibition [against trying an incompetent defendant] is fundamental to an adversary system of justice"). Similarly, "accepting a plea bargain or waiving one's right to a hearing" are "'strategically important' decisions" that require the defendant's comprehension and ability to communicate with counsel. Abbott A., 458 Mass. at 33, quoting Commonwealth v. Torres, 441 Mass. 499, 506 n.10 (2004).

But due process does not necessarily require the cessation of all pretrial hearings when the accused is incompetent to stand trial. See Abbott A., supra at 27. To determine whether due process permits a pretrial hearing to proceed where a defendant or juvenile has been found incompetent to stand trial, we apply a balancing test, set forth in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), which considers and weighs three factors:

> "First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

Torres, 441 Mass. at 502-503, quoting Spence v. Gormley, 387 Mass. 258, 274 (1982).

Under this framework, we have previously concluded that, notwithstanding a defendant's incompetency to stand trial, certain pretrial hearings may proceed without violating due process. See, e.g., Abbott A., 458 Mass. at 32 (incompetent defendant may be subjected to dangerousness hearing, pursuant to G. L. c. 276, § 58A); Commonwealth v. Nieves, 446 Mass. 583, 589 (2006) (incompetent defendant may be subjected to hearing and commitment as sexually dangerous person [SDP], pursuant to G. L. c. 123A, § 14); Torres, 441 Mass. at 499 (incompetent defendant may be subjected to bail hearing, pursuant to G. L. c. 276, § 57).

With § 58A dangerousness hearings and bail hearings, we recognized that the defendant's or juvenile's private interest at stake at the hearing -- "freedom from restraint pending trial" -- was "significant." See Abbott A., 458 Mass. at 28, 30 (dangerousness); Torres, 441 Mass. at 503 (bail). Similarly, in proceedings under the SDP civil commitment statute, G. L. c. 123A, §§ 12-14, we recognized that "[t]he defendant's interest is weighty. If committed, his loss of liberty would be total." Nieves, 446 Mass. at 590. Yet, in each of these cases, the alternative of staying the proceedings until the defendant or juvenile regained competency would have thwarted the strong

governmental interest in assuring the defendant's appearance for trial or in protecting the public from the danger posed by the defendant.

In Torres, 441 Mass. at 499, cash bail of $5,000 was set at arraignment, which the defendant posted, and he was thereafter released. After the defendant was found incompetent, the Commonwealth unsuccessfully sought his civil commitment and then sought review of the defendant's initial bail order, contending that he had become a flight risk now that he was incompetent to stand trial but could not be civilly committed. Id. at 500. If the defendant's incompetency to stand trial had precluded a bail hearing, the result would have been that the initial bail order would have remained in effect, without consideration of whether the defendant's incompetency meant that he was now a flight risk. We declared that, "[a]ssuming that the Commonwealth could demonstrate a strong risk of flight, it has a substantial interest in ensuring that whatever bail (or other condition of release) is set be adequate to ensure [the defendant's] appearance in the event -- however probable -- of a trial." Id. at 503 n.5.

In Abbott A., 458 Mass. at 25, the Commonwealth sought an order of pretrial detention based on dangerousness after the juvenile was charged with severely beating a man sleeping in a city park. If the juvenile's incompetency had precluded a

dangerousness hearing, the Commonwealth would have been limited to a bail hearing, where the focus would be only on risk of flight, not dangerousness. Id. at 31 n.9. We declared, "A dangerous defendant's or juvenile's incompetency makes him no less of a threat to the safety of others than a defendant or juvenile who is dangerous but competent." Id. at 31.

In Nieves, 446 Mass. at 587-588, the Commonwealth sought a civil commitment as an SDP of a sex offender who had been released from prison after being convicted of assault with intent to rape. A judge found probable cause to proceed to trial, which meant that the defendant remained in custody awaiting trial, but denied the Commonwealth's motion to proceed to trial because the defendant was not competent to stand trial. Id. at 588-589. We concluded that the defendant's liberty interest "must, with appropriate safeguards, yield to the Commonwealth's paramount interest in protecting its citizens" and saw "no reason why the public interest in committing sexually dangerous persons to the care of the treatment center must be thwarted by the fact that one who is sexually dangerous also happens to be incompetent." Id. at 590-591.

As to the risk of erroneous deprivation of liberty resulting from the defendant's or juvenile's incompetency, we distinguished between two types of error: factual and strategic. We concluded that "the risk of factual error at a

bail hearing" -- a miscalculation in the amount of bail that would reasonably assure the defendant's presence at trial -- "arising from a defendant's inability fully to assist his counsel [was] low" given the "familiar, straightforward, and relatively simple" nature of the inquiry. Abbott A., 458 Mass. at 29. The risk of factual error at a § 58A dangerousness hearing was greater, we held, because those are evidentiary hearings "where the focus of the inquiry is the defendant's or juvenile's dangerousness, which generally rests in large part on whether there is persuasive evidence that the defendant or juvenile has committed the violent crime charged, obstructed justice, or threatened a witness." Id. at 31. This increased risk of factual error was not so great as to violate due process, however, given the many procedural protections afforded to defendants. Id. at 32. We similarly held that an individual's rights "to the assistance of counsel, to present evidence and witnesses, and to cross-examine adverse witnesses" were sufficient protection from factual error in proceedings to civilly commit an incompetent individual based on sexual dangerousness. Id. See Commonwealth v. Burgess, 450 Mass. 366, 375 (2008); Nieves, 446 Mass. at 592.

With regard to strategic error, we explained that this risk "is greatest at trial, where the decision to proceed with trial rather than plead guilty, perhaps in return for a prosecutor's

plea recommendation, may substantially affect the severity of a defendant's sentence on conviction." Abbott A., 458 Mass. at 29. In contrast, the risk of strategic error in bail and § 58A dangerousness hearings is low "because the defendant's or juvenile's interests are clear (to obtain his release on conditions and avoid a finding of dangerousness), the hearing cannot be waived (because the Commonwealth bears the burden of proving dangerousness by clear and convincing evidence), and the defendant or juvenile almost never testifies." Id. at 33.

We now apply these same factors to determine whether due process permits a § 72A transfer hearing to proceed while the defendant is incompetent to stand trial.

2. Section 72A transfer hearings. The Commonwealth argues that applying the Mathews analysis to § 72A transfer hearings should yield the same conclusion as it did with bail hearings, dangerousness hearings, and SDP civil commitment proceedings -- that the hearings may proceed consistent with due process. The defendant contends that the factors compel the opposite conclusion. We agree with the defendant.

A defendant's interest in a § 72A transfer hearing is greater than in a bail or § 58A dangerousness proceeding, where pretrial liberty alone is at stake. Because a Juvenile Court judge at a § 72A hearing has broad discretion to determine "whether the prosecution may proceed altogether," Nanny, 462

Mass. at 806, what is at stake is not only pretrial liberty but also posttrial liberty. The potential enormity of the stakes at a § 72A hearing is clearly apparent in this case. If the Juvenile Court judge finds no probable cause or discharges the defendant, the prosecution is over. If the Juvenile Court judge finds probable cause and determines that the public interest requires that a criminal complaint issue and that the case be tried, the defendant faces the possibility that he will be found guilty of the crimes charged, sentenced as an adult for offenses that he committed as a juvenile, incarcerated in a State prison, and required to register as a sex offender. See, e.g., J.H., 479 Mass. at 292 (if transferred via § 72A, "consequences of a statutory rape conviction would not be a finding of delinquency but the possibility of a life felony"). In fact, if the defendant were to be convicted of indecent assault and battery on a mentally disabled person, in violation of G. L. c. 265, § 13F, he would be subject to a mandatory minimum sentence of five years in State prison.

While the defendant's liberty interest in a § 72A transfer hearing is greater than in a bail or § 58A dangerousness proceeding, the governmental interest in conducting such a hearing where the defendant is incompetent is less, in part because the Juvenile Court may conduct a bail or dangerousness hearing prior to the § 72A transfer hearing. Therefore, a

defendant likely to flee may be held on bail, and a violent defendant may be detained for dangerousness as he awaits the § 72A hearing for a "reasonable period of time necessary to determine whether there is a substantial probability that he will attain [competency] in the foreseeable future." Abbott A., 458 Mass. at 37, quoting Jackson v. Indiana, 406 U.S. 715, 733, 738 (1972). And if an incompetent defendant is charged with a "sexual offense" as defined in G. L. c. 123A, § 1, the Commonwealth may, if appropriate, file a petition alleging that the person is sexually dangerous "notwithstanding absence of a conviction." Commonwealth v. Curran, 478 Mass. 630, 632 (2018), citing G. L. c. 123A, §§ 12, 15. See Burgess, 450 Mass. at 374 ("the State may indeed impair the liberty interests of a defendant who is a sexually dangerous person, even when that person may not understand what is occurring and cannot communicate with counsel"). Given these options, the safety of the public does not require that a § 72A hearing proceed when the defendant is incompetent to stand trial.

Nor does the government interest in solving crimes and bringing offenders to justice require that a § 72A hearing proceed while a defendant is incompetent. Even if the § 72A transfer hearing were to take place while the defendant was incompetent, the Commonwealth would be unable to try the defendant and bring the offender to justice until the defendant

became competent.  See Prater, 420 Mass. at 573.  There are, in effect, two possible alternatives in these circumstances.  The first is that the § 72A transfer hearing is stayed, pending the defendant's competency.  The second is that the hearing proceeds, notwithstanding the defendant's incompetency, at which point the Commonwealth will be unable to proceed to trial.  Either way, the Commonwealth has no choice but to wait until the defendant becomes competent to prosecute the defendant for his alleged crimes.

Finally, because a Juvenile Court judge has so much discretion in determining whether discharge is consistent with the protection of the public, the risk of error is greater in a § 72A transfer hearing than in a bail or dangerousness hearing. The decision whether to discharge or transfer requires "consideration of the specific crime and the particular defendant," and a "thoughtful presentation by defense counsel directed at both issues is thus critical."  J.H., 479 Mass. at 290.  Defense counsel must place the defendant "into a developmental context" that allows the court "to understand how, if at all, the defendant's more mature development reduces the risk of reoffense."  Id., quoting J.D. Blitzman & K.J. King, Hearings Pursuant to G. L. c. 119, § 72A:  "Aging Out" of the System, in 1 Massachusetts Juvenile Court Bench Book § 12, at 12-11 (Mass. Cont. Legal Educ. 3d ed. 2011 & Supp. 2014).

Because, as characterized by the amici, a transfer hearing in many cases is "the whole ball game," and because the determinative issue in some cases may not be whether the defendant committed the offense but whether the defendant is unlikely to recommit an offense, a defense attorney may consider calling the defendant to testify at such a hearing, which would rarely be the case at a bail or dangerousness hearing. An incompetent defendant cannot meaningfully participate in the strategic decision whether to testify. If the defendant were to testify, defense counsel must be able to help prepare him for direct and cross-examination, which cannot happen if the defendant is incompetent.

Even where a defendant does not testify, he must be able to assist defense counsel in mounting a "thoughtful presentation" regarding whether discharge is appropriate. See Davis, 56 Mass. App. Ct. at 416-417 (discharge denied in part because defense "adduced no evidence bearing upon whether his discharge was consistent with the protection of the public"). This might mean providing defense counsel with information bearing on the defendant's rehabilitation and evolving maturity in the years since the offense, and identifying supporting evidence and witnesses, something an incompetent defendant is unlikely to be able to do.

Moreover, where a Juvenile Court judge at a § 72A hearing must determine whether "discharge is consistent with the protection of the public," that determination is more appropriately made when the defendant has regained competency and the case can proceed to trial if transferred. If the determination were made when the defendant was incompetent, the Juvenile Court judge would be unable to know when the defendant could be tried in adult court if a complaint were to issue. In making this critical discretionary decision, a judge properly might consider the age of the defendant at the time of the alleged offense (here, between thirteen and fifteen years of age) and the age of the defendant when the case would be tried; the latter would be unknowable if the defendant were incompetent at the time of the § 72A hearing. Moreover, to the extent that the defendant's rehabilitation and evolving maturity might bear on that decision, those factors should be considered when the defendant is competent and timely may be tried, not when the defendant is incompetent and may be years away from trial.

Where the liberty interest at stake in a § 72A hearing is so high, where the government's interest in proceeding with the hearing despite the defendant's incompetency is so low, and where the risk of factual and strategic error in determining whether the case should be transferred or discharged when the defendant is incompetent is so great, we conclude that due

process requires that § 72A hearings be stayed until such time as a defendant becomes competent.

3. Dismissal of the delinquency complaint. Under G. L. c. 123, § 16 (f), criminal charges must be dismissed against an incompetent defendant on the date that he would be "eligible for parole if he had been convicted of the most serious crime with which he was charged in court and sentenced to the maximum sentence he could have received, if so convicted." The court also has the authority to dismiss a criminal charge against an incompetent defendant prior to that date "in the interest of justice." Id. We have previously noted that this statutory provision does not apply to a juvenile charged as a delinquent "because the juvenile cannot receive a criminal sentence and is not eligible for parole." See Abbott A., 458 Mass. at 39 n.16. However, the statutory provision does apply to an adult defendant who is charged with crimes committed as a juvenile because, if the case were transferred to adult court after a § 72A hearing, the defendant could receive a criminal sentence and would be eligible for parole. In fact, a criminal sentence is the only sentence that could be imposed in such circumstances. Here, if the defendant were to become competent to stand trial, and if the Juvenile Court judge were to decide that a criminal complaint should issue, the defendant might be sentenced to ten years in prison if convicted of the charge of

indecent assault and battery on a mentally disabled person, and would be eligible for parole in five years.  See G. L. c. 265, § 13F; G. L. c. 123, § 16 (f).  Therefore, if the defendant were to remain incompetent to stand trial, and the § 72A hearing therefore could not be conducted, the charges against the defendant would have to be dismissed upon the expiration of that five-year period, unless the judge were to dismiss the charges earlier in the interest of justice.  See G. L. c. 123, § 16 (f).

Conclusion.  The Juvenile Court judge's order denying the defendant's motion to stay the § 72A hearing until the defendant is competent to stand trial is reversed.  The case is remanded to the Juvenile Court for further proceedings consistent with this opinion.

So ordered.