ABBOTT A., a juvenile vs. COMMONWEALTH.

Suffolk. April 7, 2010. - September 20, 2010.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, BOTSFORD, & GANTS, JJ.

*Due Process of Law,* Competency to stand trial, Pretrial detainees. *Practice, Criminal,* Competency to stand trial, Defendant's competency, Hearsay. *Delinquent Child. Insanity. Mental Impairment. Evidence,* Hearsay. *Constitutional Law,* Preventive detention.

This court concluded that it is not a per se violation of due process for a judge to conduct a hearing pursuant to G. L. c. 276, § 58A, to determine an incompetent person's dangerousness, even where that person is a juvenile [27-33], and that the Commonwealth may satisfy its burden of proof at that hearing by relying solely on hearsay evidence, such as police reports and videotapes of police interrogations of codefendants and witnesses, without presenting live testimony, so long as such evidence bears substantial indicia of reliability to supply good cause for the Commonwealth's decision not to present live testimony [33-36].

Statement of the circumstances under which an incompetent juvenile may be held in criminal custody awaiting trial, following a determination of dangerousness under G. L. c. 276, § 58A, beyond the statutory maximum period of ninety days. [36-42]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on December 2, 2009.

The case was reported by *Botsford,* J.

*Barbara Kaban (Alisa M. Rosenthal* with her) for the juvenile.

*Eitan Goldberg,* Assistant District Attorney *(Catherine Langevin Semel,* Assistant District Attorney, with him) for the Commonwealth.

*David F. Segadelli,* for Committee for Public Counsel Services, amicus curiae, submitted a brief.

GANTS, J. Acting on a petition for relief brought by the juvenile pursuant to G. L. c. 211, § 3, a single justice of this court reserved and reported three questions: (1) whether a judge may conduct a dangerousness hearing pursuant to G. L. c. 276, § 58A, where a juvenile has been determined to be legally incompetent; (2) whether, if the § 58A hearing may be held for

the juvenile, the Commonwealth may satisfy its burden of proof by relying solely on hearsay evidence, such as police reports and videotapes of police interrogations of codefendants and witnesses, without presenting live testimony; and (3) whether, if the judge orders that the juvenile be detained after the § 58A hearing, the juvenile may be held beyond the statutory maximum period of ninety days if he remains incompetent to stand trial. We answer all three questions in the affirmative, although with important caveats to each as stated herein.[1]

*Procedural background and facts.* On July 22, 2009, the juvenile, a then-fourteen year old male, and five other boys between the ages of eleven and thirteen allegedly attacked and severely beat a man sleeping on a field in a park in Lynn.[2] The juvenile was arraigned in the Juvenile Court on July 27, and charged as a delinquent child by reason of (1) armed assault with intent to murder, G. L. c. 265, § 18; (2) assault with intent to maim by means of a dangerous weapon causing serious injury, G. L. c. 265, § 14; (3) three complaints of aggravated assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (c); and (4) a civil rights violation causing bodily injury, G. L. c. 265, § 37. He pleaded not delinquent to the charges.

At the arraignment, the Commonwealth moved for an order of pretrial detention based on dangerousness, pursuant to G. L. c. 276, § 58A,[3] and for the revocation of the juvenile's bail on other delinquency charges pending against him, pursuant to G. L. c. 276, § 58.[4,5] The juvenile was detained in a temporary Department of Youth Services facility in anticipation of the

---

[1] We acknowledge the amicus brief submitted in support of the juvenile by the Committee for Public Counsel Services.

[2] The man was Guatemalan, and it was alleged that he was targeted because of his nationality. In videotaped interviews with the police, which are part of the record in this case, several of the boys identified the juvenile as the instigator of the attack. While at least three of the other boys acknowledged their involvement in the attack, they told the police that it was the juvenile who hit the man with a brick, milk crate, and stick, and stomped on his head. At the time of the interviews, the man was in a coma and it was uncertain whether he would survive.

[3] General Laws c. 276, § 58A, applies equally to juveniles as to adults. *Victor V. v. Commonwealth*, 423 Mass. 793, 796 (1996).

[4] These charges, stemming from six separate incidents between March and December, 2008, were (1) carrying a dangerous weapon in school; (2) breaking and entering with the intent to commit a misdemeanor, and larceny under

hearings on the two motions. On August 4, 2009, the juvenile moved to stay the § 58A hearing scheduled for the following day. In his motion, the juvenile argued that the hearing could not proceed because earlier that year, on February 19, 2009, the same court had determined that he was not competent to stand trial in connection with the other delinquency matters.

On August 11, the judge issued a written decision denying the juvenile's motion to stay both the dangerousness and bail revocation hearings. The juvenile petitioned a single justice of this court, pursuant to G. L. c. 211, § 3, for relief from the denial of the motion to stay the dangerousness hearing. On August 21, the single justice denied the petition without a hearing. The juvenile appealed from the judgment of the single justice to this court, and, on November 10, 2009, we held that the juvenile's "attempt to raise the claim at this juncture is premature" and that, "[i]f he receives an adverse ruling after a § 58A hearing, he can seek review at that time, which would include review of the question whether it was appropriate to have held the hearing in the first place." *Abbott A.* v. *Commonwealth*, 455 Mass. 1005, 1006 (2009).

While the appeal was pending before us, the judge conducted the dangerousness hearing on September 4 and 11, 2009. At the hearing, the Commonwealth did not call any witnesses; rather, it offered in evidence police reports and videotaped police interrogations of the codefendants and other witnesses to the beating. The juvenile did not object to the admission of these exhibits but objected to the Commonwealth's failure to call any witness, which he argued denied any opportunity for cross-examination.[6]

$250; (3) vandalism; (4) assault and battery on a public employee (school teacher); (5) trespass; and (6) assault and battery by means of a dangerous weapon.

[5]Under the bail revocation provisions of G. L. c. 276, § 58, "[i]f a person is on release pending the adjudication of a prior charge, and the court . . . finds probable cause to believe that the person has committed a crime during said period of release, the court shall then determine, in the exercise of its discretion, whether the release of said person will seriously endanger any person or the community." If the judge finds that the defendant's release will seriously endanger any person or the community "and that the detention of the person is necessary to reasonably assure the safety of any person or the community, the court may revoke bail on the prior charge and may order said person held without bail pending the adjudication of said prior charge, for a period not to exceed sixty days." *Id.*

[6]The juvenile offered in evidence a police report about another assault

After the second day of the hearing, the judge determined, by clear and convincing evidence, that the juvenile was dangerous and that no condition of his release would reasonably assure public safety. After a hearing, on October 20, 2009, the judge ruled that the period of delay arising from the juvenile's incompetency should not be counted in calculating the ninety-day maximum detention period under § 58A. On December 2, 2009, the juvenile filed his second petition for relief, pursuant to G. L. c. 211, § 3, which the single justice reserved and reported.

*Discussion.* 1. *May a dangerousness hearing pursuant to G. L. c. 276, § 58A, be conducted where the juvenile has been determined to be legally incompetent?* The test for determining the competency to stand trial of a person accused of a crime is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding — and whether he has a rational as well as factual understanding of the proceedings against him." *Commonwealth* v. *Hill*, 375 Mass. 50, 52 (1978), quoting *Dusky* v. *United States*, 362 U.S. 402, 402 (1960). See *Commonwealth* v. *Robidoux*, 450 Mass. 144, 153 (2007). "Competency to stand trial requires that the defendant have the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Commonwealth* v. *L'Abbe*, 421 Mass. 262, 266 (1995).

Due process under both the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights prohibits the prosecution from proceeding to trial against a criminal defendant or juvenile who has been found incompetent to stand trial. See *Drope* v. *Missouri*, 420 U.S. 162, 171 (1975); *Commonwealth* v. *Robidoux, supra* at 152. Due process, however, does not require the cessation of all pretrial proceedings. See *Jackson* v. *Indiana*, 406 U.S. 715, 740-741 (1972); *Commonwealth* v. *Torres*, 441 Mass. 499, 502 (2004) (*Torres*); *United States* v. *Magassouba*, 544 F.3d 387,

against a different Guatemalan man an hour after the incident charged, a letter from the Disability Law Center regarding complaints about the proclivity of one of the juvenile's schools to punish rather than educate its troubled students, four videotaped interviews of witnesses to the alleged assault, and three letters from character witnesses.

413 (2d Cir. 2008). Due process is not "a technical conception with a fixed content," *Cafeteria & Restaurant Workers Union, Local 473* v. *McElroy*, 367 U.S. 886, 895 (1961), quoting *Joint Anti-Fascist Refugee Comm.* v. *McGrath*, 341 U.S. 123, 162-163 (1951) (Frankfurter, J., concurring), but "varies with context," *Spence* v. *Gormley*, 387 Mass. 258, 274 (1982), and therefore is a " 'flexible' concept that 'calls for such procedural protections as the particular situation demands.' " *Torres, supra* at 502, quoting *Mathews* v. *Eldridge*, 424 U.S. 319, 334 (1976).

In deciding whether due process permits a pretrial hearing to proceed where the defendant or juvenile is incompetent, we consider the private interest that will be affected by the pretrial proceeding, the Commonwealth's interest in the outcome of the proceeding, and the risk that the defendant's or juvenile's incompetency during the proceeding will erroneously deprive him or her of his liberty.[7] See *Torres, supra* at 502-503. In *Torres, supra* at 507, after evaluating these three factors, we concluded that "[c]onducting a bail hearing for a defendant found incompetent to stand trial does not per se violate that defendant's due process rights," but recognized that "each case may require some assessment by the hearing judge of whether the defendant's mental condition prevents any meaningful communication with counsel, such that the court will be unable to obtain the information necessary to set a proper bail."

We recognized in *Torres* that a defendant's interest in a bail proceeding — his freedom from restraint pending trial — was "significant," as was the Commonwealth's interest in securing the presence of the defendant at trial. *Id.* at 503. The determining factor, therefore, was the risk of an erroneous deprivation of

---

[7] The juvenile argues that we need merely determine whether a § 58A hearing is a "critical stage" of the criminal process for which the juvenile must be present, because he cannot be meaningfully present if he is not competent. Certainly, given its adversary nature and the possible loss of liberty that it may entail, a § 58A hearing constitutes a critical stage of the criminal proceedings, and the accused has a right to be present at the hearing. See *Robinson* v. *Commonwealth*, 445 Mass. 280, 285 (2005), quoting Reporters' Notes to Mass. R. Crim. P. 18 (a), Mass. Ann. Laws Court Rules, Rules of Criminal Procedure, at 1429 (Lexis 2005) ("fairness demands that the defendant be present when his substantial rights are at stake"). The juvenile, however, has not identified any case where we have equated a defendant's right to be physically present at all critical stages of the criminal process with an incompetent defendant's due process rights.

a defendant's liberty interest, which caused us to "determine how likely it is that a defendant's incompetence to stand trial will result in his bail being set at a meaningfully higher level than it would be if he were competent." *Id.* at 503-504.

As to this factor, we considered both "the specific nature of the inquiry undertaken at a bail hearing, as well as the extent and nature of the incompetency." *Id.* at 504. With respect to the nature of the inquiry, we noted that "the factors that a judge is to consider when conducting a bail hearing are '(1) the nature and circumstances of the offense charged, (2) the accused's family ties, (3) his financial resources, (4) his length of residence in the community, (5) his character and mental condition, (6) his record of convictions and appearances at court proceedings or of any previous flight to avoid prosecution or (7) any failure to appear at any court proceedings.' " *Id.*, quoting *Querubin* v. *Commonwealth*, 440 Mass. 108, 115 n.6 (2003). Characterizing these as " 'familiar, straightforward, and relatively simple' factors," we declared that "[t]he inquiry at a bail proceeding . . . where the only issue is the amount of bail that will reasonably assure the defendant's presence at trial involves the presentation of evidence that, in the vast majority of cases, is undisputed, a matter of public record, or readily explained." *Torres, supra,* quoting *Querubin* v. *Commonwealth, supra* at 118. As a result, we concluded that the risk of factual error at a bail hearing arising from a defendant's inability fully to assist his counsel is low. *Torres, supra* at 505.

The nature of the inquiry affects more than the risk of factual error; it also affects the risk of strategic error, that is, the risk of error in proceeding with the hearing rather than waiving it. See *id.* at 506 n.10. This risk of strategic error is greatest at trial, where the decision to proceed with trial rather than plead guilty, perhaps in return for a prosecutor's plea recommendation, may substantially affect the severity of a defendant's sentence on conviction. See *Commonwealth* v. *Russin*, 420 Mass. 309, 316-317 (1995) (standard for competency same to plead guilty as to proceed to trial). The risk is significant, albeit less so, at a rendition hearing, where the defendant "must at the very least understand the nature of rendition proceedings so that he can decide whether to waive rendition or challenge it on the narrow grounds available to him." *Hinnant, petitioner*, 424 Mass. 900, 907 (1997). In

contrast, the risk of strategic error is far lower at a bail hearing, where the defendant's interest in obtaining the lowest bail and the least restraint on liberty is generally clear, and where waiver of the bail hearing is rare and generally would provide no benefit to a defendant. See *Torres, supra* at 504-505.

With respect to the nature and extent of the defendant's incompetency, we noted in *Torres* that "the risk of error is further mitigated where the defendant is not completely unable to assist his counsel in obtaining the information necessary for his representation at the bail hearing." *Id.* at 505. The fact that the defendant in *Torres* was "able to understand the nature of court proceedings generally" and had some, albeit limited, ability to communicate with his attorney about the proceedings reduced the risk of error at his bail hearing.[8] *Id.* at 505-506.

Applying these three analytical factors to a dangerousness hearing under § 58A, a defendant's or juvenile's interest in a dangerousness hearing is even greater than in a bail proceeding. A judge's finding at a bail hearing that substantial bail is reasonably necessary to assure the defendant's or juvenile's appearance at trial *may* result in his pretrial detention if he is unable to obtain the funds to make bail, but a judge's finding at a dangerousness hearing that "no conditions of release will reasonably assure the safety of any other person or the community" *requires* his pretrial detention. Compare G. L. c. 276, § 58, with G. L. c. 276, § 58A (3).

The Commonwealth's interest is also greater at a dangerousness hearing than a bail hearing. Where the Commonwealth requests a dangerousness hearing, its interest is not only to secure the presence of the defendant or juvenile at trial, but also to protect the safety of persons who may be endangered by the defendant's or juvenile's release. See G. L. c. 276, § 58A (2) (dangerousness hearing triggered by motion of Commonwealth). See also *Victor V. v. Commonwealth*, 423 Mass. 793, 796-797 (1996) (§ 58A is "a measure intended to protect the public

---

[8]In contrast, the petitioner in *Hinnant, petitioner*, 424 Mass. 900 (1997), where we concluded that a hearing on rendition could not proceed while the petitioner was incompetent, had a closed head injury that rendered him "literally unable to communicate with counsel." *Commonwealth v. Torres*, 441 Mass. 499, 505 (2004) (*Torres*).

from the violent acts of a dangerous individual, whether a juvenile or an adult, while that individual's trial is pending").

In determining whether due process permits an incompetent person to be civilly committed for an indeterminate period as a sexually dangerous person, as permitted by statute under G. L. c. 123A, § 15, we recognized that an individual has "a strong interest in avoiding such commitment" but his interest "must, with appropriate safeguards, yield to the Commonwealth's paramount interest in protecting its citizens." *Commonwealth* v. *Nieves*, 446 Mass. 583, 590-591 (2006). An incompetent person's strong interest in his liberty, whether the person is an adult defendant or a juvenile, must also yield, with appropriate safeguards, where there is clear and convincing evidence that his pretrial release may endanger the safety of another person or the community. See *United States* v. *Salerno*, 481 U.S. 739, 748 (1987) ("We have repeatedly held that the Government's regulatory interest in community safety can, in appropriate circumstances, outweigh an individual's liberty interest"). A dangerous defendant's or juvenile's incompetency makes him no less of a threat to the safety of others than a defendant or juvenile who is dangerous but competent. See *Commonwealth* v. *Nieves, supra* at 591 ("We see no reason why the public interest in committing sexually dangerous persons to the care of the treatment center must be thwarted by the fact that one who is sexually dangerous also happens to be incompetent").

The risk of factual error — that is, the risk that a judge will erroneously determine that no conditions of release will reasonably assure the safety of any other person or the community — is greater at a dangerousness hearing than at a bail hearing because the former is an evidentiary hearing where the focus of the inquiry is the defendant's or juvenile's dangerousness, which generally rests in large part on whether there is persuasive evidence that the defendant or juvenile has committed the violent crime charged, obstructed justice, or threatened a witness.[9] The risk, however, is not so substantial as to violate due process

---

[9]The judge at a dangerousness hearing may also consider the factors that may be considered at a bail hearing, compare G. L. c. 276, § 58A, with G. L. c. 276, § 58, but the focus of the inquiry is on dangerousness, not on risk of flight.

because the Commonwealth bears the burden of proving danger-ousness by clear and convincing evidence and because an incompetent defendant or juvenile has rights under § 58A to the assistance of counsel, to present evidence and witnesses, and to cross-examine adverse witnesses, which allow him to defend adequately against the allegations of dangerousness and to diminish the risk of factual mistake. Cf. *Commonwealth* v. *Burgess*, 450 Mass. 366, 375 (2008) (sexual dangerousness). While an incompetent defendant or juvenile cannot exercise these rights himself, his attorney may exercise them on his behalf. See *Commonwealth* v. *Nieves*, *supra* at 592. See also *Commonwealth* v. *Hatch*, 438 Mass. 618, 626 (2003) ("fact that a defendant has been deemed incompetent *to stand trial* has no bearing on his ability, or that of his attorney, to present evidence at a [G. L. c. 123,] § 17 [*b*] hearing" [emphasis in original]).[10] In several other contexts, we have rejected the assertion that these protections are unworkable when a person is incompetent. See *Commonwealth* v. *Burgess*, *supra* (civil commitment based on sexual dangerousness under G. L. c. 123A, § 15); *Commonwealth* v. *Nieves*, *supra* (civil commitment based on sexual dangerousness under G. L. c. 123A, § 14); *Commonwealth* v. *Hatch*, *supra* (G. L. c. 123, § 17 [*b*]).

The risk of factual error is also diminished where, as here, the licensed forensic psychologist who interviewed the juvenile in her capacity as a certified juvenile court clinician on January 8, 2009, and whose evaluation was relied on by the judge prior to the dangerousness hearing in finding the juvenile incompetent, reported that the juvenile was able to identify and accurately define the charges against him and claimed to be able to recall his version of events. The psychologist also reported that the juvenile understood that his attorney would try to help him and that he could help his attorney defend him by telling his "side of the story." Consequently, while the juvenile had borderline

---

[10]Under G. L. c. 123, § 17 (*b*), a person found incompetent to stand trial may request an evidentiary hearing where he believes that he can establish his innocence of charges pending against him on grounds other than lack of criminal responsibility. If a judge in the exercise of discretion grants such a hearing and finds a lack of substantial evidence to support a conviction, the judge shall dismiss the charges and order the release of the defendant from criminal custody.

cognitive abilities which, along with his learning disability and emotional issues, made it challenging to learn and retain information about the court process and rendered him unable to make rational decisions as to how to proceed in court, the record reflects that he was able, at least to some degree, to describe to his attorney the events regarding the alleged beating as he recalled them. As in *Torres* and in contrast to *Hinnant, petitioner,* 424 Mass. 900 (1997), the judge found that the juvenile, "with his somewhat limited abilities, can participate in the [§ 58A] hearing."

The risk of strategic error is no greater at a dangerousness hearing than a bail hearing, because the defendant's or juvenile's interests are clear (to obtain his release on conditions and avoid a finding of dangerousness), the hearing cannot be waived (because the Commonwealth bears the burden of proving dangerousness by clear and convincing evidence), and the defendant or juvenile almost never testifies. The decisions that an attorney must make at a § 58A hearing — what evidence, if any, to present and whether and how to cross-examine the Commonwealth's witnesses — are "quintessentially the types of choices that attorneys regularly make with respect to their competent clients." *Commonwealth* v. *Nieves, supra* at 592. They do not fall within those categories of "strategically important" decisions reserved exclusively for the client, such as accepting a plea bargain or waiving one's right to a hearing. *Torres, supra* at 506 n.10. See Mass. R. Prof. C. 1.2 (a), 426 Mass. 1310 (1998) ("lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial, and whether the client will testify").

For these reasons, we conclude that it is not a per se violation of due process to hold a hearing under § 58A to determine an incompetent person's dangerousness, regardless whether the person is an adult defendant or a juvenile.[11]

2. *May the Commonwealth satisfy its burden of proof at a*

---

[11]We leave open the possibility of a different conclusion if a judge were to conclude that, because of the person's incompetency, the judge is unable to obtain adequate information to make a reliable dangerousness determination. See *Torres, supra* at 507. We also leave open the possibility that a judge may consider a juvenile's age in coming to such a conclusion. We need not reach these questions here because the judge made no such finding as to the juvenile's incompetency, and the record does not support such a finding.

*§ 58A hearing by relying solely on hearsay evidence, such as police reports and videotapes of police interrogations of codefendants and witnesses?* While the juvenile concedes that hearsay is admissible at a § 58A hearing, he brings two interrelated challenges to the Commonwealth's evidence in this case. First, he argues that the Commonwealth's failure to present any live testimony denied him the right that § 58A confers on defendants and juveniles to cross-examine adverse witnesses. Second, he contends that the police reports and videotaped interrogations of codefendants and witnesses introduced by the Commonwealth were not sufficiently reliable to be admissible.

Section 58A provides that the "rules concerning the admissibility of evidence in criminal trials shall not apply to the presentation and consideration of information at the hearing." G. L. c. 276, § 58A (4). In *Mendonza* v. *Commonwealth*, 423 Mass. 771, 785-786 (1996), we held that art. 12 does not require the rules of evidence that govern a criminal trial to apply at a § 58A hearing, recognizing that we have not required the rules of evidence to apply at a probation revocation hearing, where deprivation of liberty is also at stake. See *Commonwealth* v. *Durling*, 407 Mass. 108, 114-120 (1990) (*Durling*). At that time, we did not specifically address whether the Commonwealth may proceed at a § 58A hearing solely on the basis of hearsay evidence or whether that evidence must bear substantial indicia of reliability to be admissible. We conclude that the answers to these questions are the same at a § 58A hearing as at a probation revocation hearing.

In *Durling, supra* at 114, we concluded that because probation revocation hearings must be "flexible in nature" and because "all reliable evidence should be considered," we have always allowed the use of reliable hearsay at probation revocation hearings. We recognized that "[n]ormally, the best source of information for [an accurate] determination [whether revocation is proper] is the testimony of one or more persons who have personal knowledge of the facts which the Commonwealth alleges constitute a violation," and which "can be tested by cross-examination." *Id.* at 116-117. However, we also recognized that live testimony subject to cross-examination may not be realistic or even possible. *Id.* at 117. To preserve the "due process touchstone of an accurate and reliable determination," we con-

cluded that hearsay that would otherwise be inadmissible at a criminal trial may be admitted at a revocation hearing if the evidence is reliable and if there is good cause to deny the defendant his right of confrontation. *Id.* at 117-118. See *Commonwealth* v. *Wilcox*, 446 Mass. 61, 67-70 (2006) (constitutional right of confrontation does not apply to probation revocation hearing, but "concepts of due process embodied in the Fourteenth Amendment . . . and art. 12 . . . do apply and give rise to the broader but more flexible right of confrontation described in *Commonwealth* v. *Durling, supra*" [citations omitted]). A prosecutor may show good cause in two ways: by presenting a valid reason for not presenting a live witness or by "showing that the proffered evidence bears substantial indicia of reliability and is substantially trustworthy." *Durling, supra* at 117-118. See *Commonwealth* v. *Negron*, 441 Mass. 685, 691 (2004). We cautioned, however, "that when hearsay is offered as the only evidence of the alleged violation, the indicia of reliability must be substantial . . . because the probationer's interest in cross-examining the actual source (and hence testing its reliability) is greater when the hearsay is the only evidence offered" (citation omitted).[12] *Durling, supra* at 118. See *Commonwealth* v. *Maggio*, 414 Mass. 193, 196 (1993) (defendant's probation may be revoked "solely on hearsay evidence," provided evidence bears substantial indicia of reliability). "Unsubstantiated and unreliable hearsay cannot, consistent with due process, be the entire basis of a probation revocation." *Durling, supra.*

We apply the same due process principles to a § 58A hearing. Applying these principles to the present case, the Commonwealth's evidence consisted exclusively of out-of-court statements by codefendants and witnesses that were contained in police reports and videotaped admissions. Having examined the

---

[12]In *Commonwealth* v. *Durling*, 407 Mass. 108, 110 (1990), the only evidence proffered at the probation revocation hearing was two police reports related to the arrests of the defendant while on probation that were read in evidence by the probation officer; the probation officer had no personal knowledge of the events recounted in the two police reports, so cross-examination was quickly abandoned. We concluded that the two police reports were "imbued with sufficient indicia of reliability to warrant a denial of the defendant's limited right to cross-examination," noting that they were "factually detailed" and related facts "observed by the police officers personally." *Id.* at 120-121.

record, we are satisfied that the reports and videotapes bore substantial indicia of reliability to supply good cause for the Commonwealth's decision not to present live testimony. The police reports are factually detailed and corroborated by the accounts of the eyewitnesses and codefendants. See *Commonwealth v. Negron, supra; Commonwealth v. Maggio, supra* at 199 n.3 ("detailed police reports" constitute "[r]eliable, factually detailed hearsay . . ."). The most damaging evidence against the juvenile was the videotaped statements of his codefendants, which were "made close in time to the events in question" and are "based on personal knowledge and direct observation" — factors tending to make them more reliable.[13] *Commonwealth v. Negron, supra.* These statements were made after waiving their Miranda rights in the presence of their parents or legal guardians, and after being informed that the interviews were being recorded. Because they were videotaped, the judge had the opportunity to evaluate the credibility of the statements directly; the statements were not filtered through the recollection of the interrogating police officers. While we recognize that the codefendants had a motive to deny or diminish their role in the alleged beating, we believe it important that the statements, although taken separately, are consistent with one another in identifying the juvenile as the instigator of the violent acts and in describing the violent acts that he committed, including striking the victim in the head with a brick. See *Commonwealth v. Durling, supra* at 121 (similarity of reports indicative of reliability). Although the judge, like the judge in *Durling*, made no finding of good cause to deny the juvenile his conditional right to confrontation, we conclude, as we did in *Durling, supra* at 122, that no remand is necessary, because the judge implicitly and properly determined that the hearsay presented by the Commonwealth was substantially reliable to warrant a finding of dangerousness by clear and convincing evidence.

3. *May the juvenile be held beyond ninety days if he remains incompetent to stand trial?* Section 58A requires a speedy trial for a defendant or juvenile who is detained based on a finding

---

[13]Apart from the substantial reliability of the videotaped interrogations, the codefendants' delinquency charges provide good cause not to call them to testify at the juvenile's § 58A hearing, where they could have claimed their privilege against self-incrimination.

of dangerousness: "A person detained under this subsection shall be brought to a trial as soon as reasonably possible, but in absence of good cause, the person so held shall not be detained for a period exceeding ninety days excluding any period of delay as defined in [Mass. R. Crim. P. 36 (b) (2), 378 Mass. 909 (1979)]." G. L. c. 276, § 58A (3). The judge ruled that the maximum ninety-day detention period under § 58A is tolled because of the juvenile's incompetency. The juvenile argues that this ruling was an incorrect interpretation of the statute, and that, if correct, it could result in the indefinite detention of the juvenile in violation of his due process rights.

The judge's ruling is required by the language of the statute. Section 58A (3) excludes from the ninety-day deadline "any period of delay as defined in" rule 36 (b) (2) and among the excluded periods of delay defined in that rule is "[a]ny period of delay resulting from the fact that the defendant is mentally incompetent or physically unable to stand trial." Mass. R. Crim. P. 36 (b) (2) (C). See *Commonwealth* v. *Jones,* 417 Mass. 661, 664 (1994) (where "explicit language of the statute unambiguously manifests a legislative intent," court is "not free to ignore or to tamper with that clear expression of legislative intent").

While an incompetent defendant or juvenile potentially may be detained indefinitely awaiting trial under § 58A, his detention is limited by constitutional requirements of due process. The due process limitation is three-fold. First, an incompetent defendant or juvenile may not be held in criminal custody awaiting trial "more than the reasonable period of time necessary to determine whether there is a substantial probability that he will attain [competency] in the foreseeable future." *Jackson* v. *Indiana,* 406 U.S. 715, 733, 738 (1972) (*Jackson*). To satisfy this due process requirement, referred to in *Jackson* as the "rule of reasonableness," *id.* at 733, a judge must make a searching inquiry into the likelihood that a defendant or juvenile will become legally competent in the foreseeable future. *Id.* at 738. See *Foucha* v. *Louisiana,* 504 U.S. 71, 79 (1992) (State entitled to detain incompetent defendant "only long enough to determine if he could . . . become competent").[14]

A searching inquiry is particularly important in the case of a

---

[14]We recognize that the Supreme Court in *Jackson* v. *Indiana,* 406 U.S.

juvenile because, as Juvenile Court judges no doubt understand from their expertise and experience, "adjudicative incompetence in youth may stem from different causes, including psychopathology, mental retardation, and/or immaturity. These different causes may affect the type of competency interventions needed, as well as the likelihood that interventions will be effective." Viljoen, Prospects for Remediating Juveniles' Adjudicative Incompetence, 13 Psychol. Pub. Pol'y & L. 87, 90 (2007). Given the complex nature of incompetency, judges, with expert assistance, must determine the cause of the incompetency, whether competency can be achieved through remediation, what particular steps should be taken, and the time required to achieve competency. See *id.* at 87, 107-108.[15] For adults and juveniles alike, if there is no substantial probability of attaining legal competency in the foreseeable future, "then the State

---

715, 733, 736 (1972) (*Jackson*), noted that the adult defendant in that case had not been found dangerous, and declared that the rule of reasonableness would not apply where there was a finding of dangerousness. The finding of dangerousness the Court was referring to, however, was a finding made to warrant a *civil* commitment, not a finding made to warrant *criminal* pretrial detention. *Id.* at 738. The Court's reference to a finding of dangerousness cited *Greenwood* v. *United States*, 350 U.S. 366, 372-374 (1956), where a Federal judge had found that the defendant awaiting trial was "insane" and that, if released, he would probably endanger the safety of the officers, property, or other interests of the United States. See *Jackson, supra* at 731-732. This was the same finding required under 18 U.S.C. § 4247 (1970), for the civil commitment of a convicted Federal prisoner whose sentence was about to expire. See *Jackson, supra*; *Greenwood* v. *United States, supra* at 368 n.3, 373. The Bail Reform Act of 1984, 18 U.S.C. § 3142 (1982 & Supp. IV 1986), which allowed a Federal court to detain a criminal defendant based on a finding of dangerousness, had not been enacted when *Jackson* was decided. In any event, even if under Federal constitutional law the "rule of reasonableness" does not apply where there is a finding of dangerousness that triggers criminal pretrial detention, we hold here that under art. 12 of the Massachusetts Declaration of Rights, the "rule of reasonableness" applies to an incompetent adult criminal defendant or juvenile who is detained before trial on grounds of dangerousness under § 58A.

[15]Developmental immaturity is a particularly challenging issue. Although a juvenile may be found incompetent because of age-related incapacities, it would not be reasonable to detain a young juvenile for a potentially lengthy period of time solely to wait for him to grow older and presumably gain additional maturity and capacity as a function of age. See Viljoen, Prospects for Remediating Juveniles' Adjudicative Incompetence, 13 Psychol. Pub. Pol'y & L. 87, 92 (2007) ("Simply waiting for youths to mature is likely to be unacceptable . . . [as a matter of due process], yet . . . it is unclear whether it is possible to accelerate the acquisition of normal developmental capacities").

must either institute the customary civil commitment proceeding that would be required to commit indefinitely any other citizen, or release the defendant." *Jackson, supra* at 738. See *Foucha* v. *Louisiana, supra* at 79.

Second, even if it is determined that the adult defendant or juvenile "probably soon will be able to stand trial, his continued commitment must be justified by progress toward that goal." *Jackson, supra.* We interpret this to mean that a finding of substantial probability that an incompetent adult defendant or juvenile will attain legal competency in the foreseeable future must be supported by evidence that the defendant or juvenile has made progress toward achieving competency.

Third, even where there is a substantial probability that an adult defendant or juvenile will be restored to competency in the foreseeable future and there is progress toward achieving competency, due process requires that an incompetent defendant or juvenile not be detained under § 58A for an unreasonable period of time.[16] See *United States* v. *Magassouba*, 544 F.3d 387, 416 (2d Cir. 2008). With this durational limitation, as with the rule of reasonableness, we cannot "prescribe arbitrary time limits," *Jackson, supra,* or "bright lines," *United States* v. *Magassouba, supra.* Rather, we consider the totality of the circumstances, including the length of the pretrial detention, the

---

[16]This due process limitation on the duration of an incompetent defendant's pretrial detention under § 58A is different from and cannot exceed the statutory limit on the pendency of criminal charges where the defendant remains incompetent, which requires the dismissal of the criminal charges on the "date of the expiration of the period of time equal to the time of imprisonment which the person would have had to serve prior to becoming eligible for parole if he had been convicted of the most serious crime with which he was charged in court and sentenced to the maximum sentence he could have received, if so convicted." G. L. c. 123, § 16 (*f*). The due process durational limitation requires the release of the defendant from criminal pretrial detention but does not require dismissal of the underlying charges; the statutory limitation requires dismissal. Neither limitation prevents the Commonwealth from seeking civil commitment of the defendant under G. L. c. 123, §§ 8 & 16 (*b*).

Where, as here, a juvenile is charged as a delinquent rather than a youthful offender, the statutory limitation of § 16 (*f*) does not apply because the juvenile cannot receive a criminal sentence and is not eligible for parole. See G. L. c. 119, § 58. However, due process would prevent the duration of a juvenile's pretrial detention under § 58A from exceeding the length of time the juvenile could be committed to the custody of the Department of Youth Services if he had been adjudicated delinquent.

degree of dangerousness, the seriousness of the offense charged, the probability that the defendant or juvenile shall become competent, the anticipated time frame to achieve competency, whether the defendant or juvenile has prolonged his period of incompetency by refusing to take prescribed medication, and any unfair prejudice to the defendant or juvenile. See *id.* at 416-417. Where, as here, the individual detained is a juvenile, his age, the nature of his incompetency, and the conditions of his confinement, must also be considered in determining whether the detention has continued for an unreasonable period of time. See *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.*, 374 Mass. 640, 666 (1978) (rehabilitative principle that, "to the extent possible, the best interests of the child serve to guide disposition . . . applies equally to juveniles charged with the most serious offenses as to those charged with minor offenses"). See also *Schall* v. *Martin*, 467 U.S. 253, 265, 270-271 (1984), quoting *Santosky* v. *Kramer*, 455 U.S. 745, 766 (1982) (pretrial detention of juveniles compatible with due process where "conditions of confinement" reflect "State's 'parens patriae interest in preserving and promoting the welfare of the child' "). Cf. G. L. c. 119, § 58 ("age and maturity" factors for judge to consider in sentencing youthful offender).

Pretrial detention under § 58A was intended to be short lived, ending on the conclusion of a speedy trial. See G. L. c. 276, § 58A (3); *Mendonza* v. *Commonwealth*, 423 Mass. 771, 783 (1996) (under § 58A, detention is "limited and preliminary" to main event of trial). In contrast, civil commitment of those who are mentally ill and dangerous to themselves or others is "potentially indefinite and even lifelong," *id.*, although the first order of commitment expires after six months and all subsequent commitments expire after one year. G. L. c. 123, § 8 (*d*). In *Mendonza* v. *Commonwealth, supra,* we concluded that, because of this difference in anticipated duration, art. 12 requires proof of dangerousness beyond a reasonable doubt for civil commitment but clear and convincing proof of dangerousness for pretrial detention. See *Querubin* v. *Commonwealth*, 440 Mass. 108, 120 n.9 (2003). Accordingly, once an incompetent defendant's or juvenile's pretrial detention under § 58A violates the "rule of reasonableness" in *Jackson* or fails to result in progress toward achieving competency or has become unreasonable in duration,

due process requires that the Commonwealth either move for civil commitment under G. L. c. 123, § 8 (*d*), and prove the individual's dangerousness by the more demanding beyond a reasonable doubt standard, or release the individual on bail. See *Querubin* v. *Commonwealth, supra*; *Mendonza* v. *Commonwealth, supra*.

We are unable to evaluate whether the juvenile's detention in this case violates due process because the record is insufficient. The record shows that the judge has made repeated findings that the juvenile is incompetent. As noted earlier, the judge found the juvenile incompetent on February 19, 2009, in connection with the earlier delinquency matters. On December 11, 2009, the judge, having received new evaluations by three psychologists, again concluded that the juvenile was not competent to stand trial.[17] But the record does not reflect that the judge has made the necessary findings under the "rule of reasonableness" as to whether there is a substantial probability that the juvenile will attain competency in the foreseeable future, whether there is evidence of progress toward achieving competency, and, if there is such a substantial probability and progress, whether the duration of his pretrial detention has become unreasonable. Such findings are necessary to ensure that the juvenile's right to due process is protected, and we order the case remanded to the judge so that he may conduct a prompt hearing and make such findings.

If, after such hearing, the judge determines that the juvenile remains incompetent to stand trial but that due process does not yet require his release from pretrial detention, we exercise our

---

[17]At oral argument, defense counsel stated that the juvenile's competency would be subject to another in-court review on June 4, 2010. Counsel has since notified us that, on June 4, the judge marked for identification four new competency evaluations: one from a court-ordered psychologist, one from a defense psychiatrist, another from a defense psychologist, and one from a psychologist retained by the Commonwealth. At the hearing, the Commonwealth said it was willing to stipulate that the juvenile remained incompetent to stand trial. Determining that the prior finding of incompetency and detention "will extend," the judge continued the matter for a status update on July 1, 2010. At that hearing, the judge ordered that the juvenile remain in pretrial detention, again finding that the ninety-day maximum detention period was tolled in light of the juvenile's incompetency. Status updates were held on August 5, 2010, and August 31, 2010, with the juvenile again ordered to remain in pretrial detention. The next status update is scheduled for October 7, 2010.

superintendence power under G. L. c. 211, § 3, to require that, until the juvenile is declared competent to stand trial or released from pretrial detention, a hearing be conducted no less than every ninety days to determine whether he continues to be incompetent to stand trial and, if so, whether due process requires his release from pretrial detention.[18]

*Conclusion.* The judge's order of August 11, 2009, denying the juvenile's motion to stay the § 58A hearing is affirmed, as is the judge's order of pretrial detention on September 11, 2009, based on his finding by clear and convincing evidence that no conditions of relief imposed on the juvenile will reasonably assure the safety of the community. The case is remanded to the Juvenile Court judge for a hearing, to be conducted within thirty days of the issuance of the rescript in this case, to determine, consistent with this opinion, (1) whether the juvenile remains incompetent to stand trial; (2) whether there is a substantial probability that the juvenile will attain competency in the foreseeable future; (3) whether the juvenile has made progress toward achieving competency; and (4) if there is such a substantial probability and progress, whether the duration of his pretrial detention has become unreasonable.

*So ordered.*

---

[18]Under G. L. c. 123, § 17 (*a*), a defendant who is found incompetent to stand trial is entitled to a "periodic review" that shall include a clinical opinion as to the defendant's competence. We require that a periodic review for juveniles in pretrial detention be conducted no less than every ninety days because, under G. L. c. 119, § 53, the statutes governing delinquent children "shall be liberally construed so that . . . as far as practicable, they shall be treated, not as criminals, but as children in need of aid, encouragement and guidance." We do not address whether a periodic review must be conducted no less than every ninety days for adults in comparable situations.