NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-13678

IN THE MATTER OF AN IMPOUNDED CASE.


Suffolk.       November 3, 2025. - May 6, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges,
                    & Wolohojian, JJ.


Supreme Judicial Court, Superintendence of inferior courts.  Due
     Process of Law, Substantive rights, Competency to stand
     trial, Pretrial detainees.  Practice, Criminal, Competency
     to stand trial, Defendant's competency.  Moot Question.
     Bail.


     Civil action commenced in the Supreme Judicial Court for
the county of Suffolk on August 22, 2024.

     The case was heard by Dewar, J.


     Ross E. Schreiber for the petitioner.
     Kenneth E. Steinfield, Assistant District Attorney, for the
Commonwealth.


     GEORGES, J.  The defendant[1] appeals from the judgment of a

single justice of this court denying his petition for

_____

     [1] Although the action was commenced in the county court by
the petitioner, for convenience we refer to him as the
"defendant."

extraordinary relief pursuant to G. L. c. 211, § 3. This case requires us to consider the constitutional limits on the pretrial detention of a defendant who has been found incompetent to stand trial and, in particular, whether the framework articulated in Abbott A. v. Commonwealth, 458 Mass. 24, 37-41 (2010), applies where detention results not from a determination of dangerousness under G. L. c. 276, § 58A, but from the defendant's inability to post cash bail. Because the substantive due process principles underlying Abbott A. are not confined to any single statutory mechanism of detention, we conclude that its framework governs the constitutional inquiry in this context. We affirm.

Background. 1. Trial court proceedings. Two Superior Court cases are at issue. In the first, the Commonwealth alleges that in May 2019 the defendant participated in a violent home invasion during which he pointed a firearm at a victim's head and struck other victims with the weapon. A grand jury returned indictments charging the defendant with home invasion, in violation of G. L. c. 265, § 18C; three counts of assault by means of a dangerous weapon, in violation of G. L. c. 265,

§ 15B (b); and four counts of assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A (b).[2]

In the second Superior Court case, the Commonwealth alleges that in December 2019 the defendant discharged a firearm multiple times and that execution of a search warrant uncovered a loaded, stolen firearm in a vehicle he used that was registered to his mother. Those allegations resulted in indictments charging two counts of carrying a firearm without a license, in violation of G. L. c. 269, § 10 (a); two counts of carrying a loaded firearm without a license, in violation of G. L. c. 269, § 10 (n); one count of discharging a firearm within 500 feet of a building, in violation of G. L. c. 269, § 12E; one count of possessing a large capacity firearm, in violation of G. L. c. 269, § 10 (m); and two counts of possessing ammunition without a firearm identification card, in violation of G. L. c. 269, § 10 (h) (1).

In November 2020, in each Superior Court case, the parties stipulated that the defendant was incompetent to stand trial and unlikely to attain competency. A Superior Court judge endorsed the stipulation and found the defendant was "currently incompetent to stand trial."

---

[2] We include information drawn from the electronic dockets. See Donald v. Commonwealth, 494 Mass. 1016, 1017 (2024), citing Mushwaalakbar v. Commonwealth, 487 Mass. 627, 631-632 (2021).

While those cases were pending, a criminal complaint issued in the Dorchester Division of the Boston Municipal Court Department charging the defendant with drug and firearm offenses (BMC case).  At arraignment, pursuant to G. L. c. 276, § 58, a Boston Municipal Court judge revoked the defendant's bail in the Superior Court matters for sixty days and set $30,000 cash bail in the BMC case.[3]

On August 9, 2024, the day the revocation order expired, a bail hearing was held in the Superior Court cases.  The defendant argued that, in light of the incompetency findings, imposing cash bail that resulted in pretrial detention would violate due process under Jackson v. Indiana, 406 U.S. 715, 738 (1972), and Abbott A., 458 Mass. at 37-41.  The Commonwealth sought $5,000 cash bail in each case notwithstanding the incompetency findings.  The prosecutor represented that the Commonwealth intended to seek a new competency evaluation given the passage of time and emphasized the seriousness of the

---

[3] Pursuant to G. L. c. 276, § 58, seventh par., where a defendant "on release pending the adjudication of a prior charge" is subsequently charged with committing a new offense and probable cause is found that the offense was committed during the period of release, the court may, upon determining that continued release would "seriously endanger any person or the community" and that detention is necessary to reasonably assure safety, revoke bail on the prior charge and order the defendant held without bail for up to sixty days.  The statute further requires that a defendant be expressly informed that bail may be revoked should he or she commit a new offense while on release.  Id.

Superior Court charges and the allegations in the BMC case, arguing that the defendant posed a flight risk.

The hearing judge imposed $5,000 cash bail in each Superior Court case and rejected the defendant's due process argument, stating that, if required to err, he would do so "on the side of protecting the public."  In setting bail, the judge relied on "the seriousness of [the defendant]'s criminal record," "the seriousness of the[] new charges" in the BMC case, and the defendant's financial circumstances.[4]

At that time, the defendant remained in custody because he had not posted bail in the BMC case.[5]  The BMC case was dismissed on September 24, 2024, after which the defendant was no longer held on the bail order in that case.

2.  Single justice petition.  On August 22, 2024, the defendant petitioned for extraordinary relief pursuant to G. L. c. 211, § 3, asking a single justice of this court to vacate the bail orders in the two Superior Court cases and to order his release from custody.  As in the Superior Court, the defendant

---

[4] If the defendant were to post bail, the hearing judge ordered conditions of release, including home confinement subject to limited exceptions and global positioning system monitoring.  The defendant does not challenge those conditions.

[5] On August 29, 2024, the cash bail in the BMC case was reduced from $30,000 to $15,000.

did not challenge the setting of cash bail itself, but rather challenged the resulting pretrial detention.

Relying on Jackson, 406 U.S. at 738, and Abbott A., 458 Mass. at 37-41, the defendant argued that his continued detention violated his substantive due process rights under art. 12 of the Massachusetts Declaration of Rights and the Fourteenth Amendment to the United States Constitution. He relied on the 2020 incompetency findings and multiple competency evaluations concluding that restoration of his competency was unlikely. In support of his petition, the defendant submitted evidence of his competency evaluation history, including reports from three such evaluations.[6]

The first report, dated January 2020, summarized an evaluation conducted by Dr. Carla Muñoz, a forensic psychologist. Muñoz concluded that the defendant met "the diagnostic criteria for Borderline Intellectual Functioning and Cannabis Use Disorder." According to the report, those conditions produced "genuine cognitive deficits" impairing his

---

[6] These reports referenced earlier evaluations by other psychologists, including the following: a 2017 opinion that, because of significant learning disabilities, the defendant lacked "abilities relevant to competence to stand trial" and that restoration might not be possible even with "appropriate interventions"; a 2019 opinion that the defendant was "not competent to stand trial" and that "his deficits may be sufficiently severe that restoration to competency may not be possible"; and a 2019 opinion that the defendant had "cognitive deficits" that warranted further evaluation.

abilities related to competency to stand trial that were likely to persist because the defendant was unlikely "to benefit significantly from . . . remediation programs."  Muñoz also observed that the defendant's deficits "seem[ed] to be exacerbated by poor effort and an exaggerated presentation," including "attempts to portray himself [as] more impaired [than] he actually [was]."

The second report, prepared in August 2020 by Dr. Gregg Belle, a forensic psychologist, likewise concluded that the defendant had "longstanding cognitive deficits," exacerbated by "chronic marijuana usage," that substantially affected "his competency[-]related behaviors."  Belle further opined that those "cognitive limitations" would hinder efforts at competency restoration.

The third report, authored by Dr. Anne Johnson in April 2022, arose from a competency evaluation she conducted in connection with a separate criminal matter.  In her report, Johnson concluded that the defendant "lack[ed] both a factual and rational understanding of the proceedings against him" and that his competency was "unlikely to be restored."

On September 27, 2024, the single justice denied the petition.  The single justice concluded that the Superior Court hearing judge did not abuse his discretion in setting bail and that the defendant's detention to that point had not violated

his substantive due process rights.  Applying the Abbott A.
framework, the single justice determined that the defendant had
not been held "more than the reasonable period of time necessary
to determine whether there [was] a substantial probability that
he [would] attain [competency] in the foreseeable future."  See
Abbott A., 458 Mass. at 37, quoting Jackson 406 U.S. at 738.  In
reaching that conclusion, the single justice relied on the
seriousness of the alleged offenses, extensive and recent
evidence suggesting the defendant posed a danger to the
community, the passage of time since the prior competency
evaluations -- which the single justice viewed as containing
some equivocal language -- and the duration of detention.  The
defendant appeals.

Discussion.  1.  Mootness.  As previously mentioned, in the
Superior Court and before the single justice, the defendant did
not challenge the setting of cash bail itself, but rather the
resulting detention.  The defendant acknowledges that on October
4, 2024, he posted the bails at issue and was released from
pretrial detention.  The issue is therefore moot.  See Lynn v.
Murrell, 489 Mass. 579, 582 (2022).

We nevertheless agree with the defendant that the issue is
capable of repetition yet evading review.  Cf. Commonwealth v.
A.Z., 493 Mass. 427, 430 (2024); Newton-Wellesley Hosp. v.
Magrini, 451 Mass. 777, 782-783 (2008) (Magrini); Commonwealth

v. Cargill, 445 Mass. 329, 329-330 (2005). Although we are generally reluctant to resolve moot constitutional questions, we have done so where an issue of broad public importance has generated ongoing uncertainty. See Commonwealth v. Padilla, 493 Mass. 1023, 1026 (2024). This appeal presents such an issue: whether, and in what circumstances, the framework articulated in Abbott A. applies to pretrial detention resulting from a defendant's inability to post bail where competency is in question. Cf. Magrini, supra at 782; Commonwealth v. McCulloch, 450 Mass. 483, 486 (2008). We therefore exercise our discretion to reach the merits. See Padilla, supra; McCulloch, supra.

2. Substantive due process. "We review a single justice's denial of a petition under G. L. c. 211, § 3, for clear error of law or abuse of discretion," while also considering "the propriety of the Superior Court judge's underlying bail order" (citation omitted). Campbell v. Commonwealth, 494 Mass. 750, 752-753 (2024).

The defendant argues that, because he was previously found incompetent and unlikely to attain competency, his detention violated his right to substantive due process. "Substantive due process prohibits government conduct that 'shocks the conscience,' or interferes with 'rights implicit in the concept of ordered liberty.'" Mushwaalakbar v. Commonwealth, 487 Mass. 627, 633 (2021), quoting Commonwealth v. G.F., 479 Mass. 180,

195 (2018).  Where a fundamental liberty interest is burdened, strict scrutiny applies, requiring the challenged restraint to be narrowly tailored to serve a compelling governmental interest and to be the least restrictive means of doing so.  See Matter of F.A., 494 Mass. 673, 677 (2024).  The deprivation asserted here -- physical restraint resulting from inability to post bail -- implicates a core liberty interest in freedom from bodily restraint pending trial.  See G. L. c. 276, § 57; Querubin v. Commonwealth, 440 Mass. 108, 111-112 (2003).

The requirements of due process "vary depending on the context" (citation omitted).  Sharris v. Commonwealth, 480 Mass. 586, 598 (2018).  In this context, the parties correctly identify Abbott A., 458 Mass. at 37-41, applying Jackson, 406 U.S. at 738, as supplying the governing framework for evaluating the constitutionality of detaining an incompetent defendant pending trial.  See Makis M. v. Commonwealth, 494 Mass. 23, 39 (2024) (citing Jackson in context of substantive due process).

Although our decision in Abbott A. arose in the context of detention pursuant to G. L. c. 276, § 58A, see Abbott A., 458 Mass. at 25-27, nothing in that decision suggested the framework we articulated was confined to that statutory setting.  Rather, the analysis in Abbott A. was grounded in the broader substantive due process principles governing the permissibility of detaining an incompetent person.  See id. at 37-41.

Those principles are not dependent on the procedural mechanism through which detention is imposed.  Where, as here, an incompetent defendant challenges continued detention on substantive due process grounds, the considerations identified in Abbott A. provide an appropriate and instructive framework reflecting this court's considered articulation of the factors relevant to determining when pretrial detention becomes constitutionally excessive.

To the extent there was uncertainty whether the Abbott A. analysis applies outside the context of detention for dangerousness under G. L. c. 276, § 58A, our precedent indicates that it does.  See Matter of a Juvenile, 485 Mass. 831, 839 (2020) (noting that potentially incompetent defendant "likely to flee may be held on bail" subject to Abbott A. analysis); Commonwealth v. Torres, 441 Mass. 499, 506 (2004) (explaining that Jackson analysis becomes relevant when bail decision results in prolonged detention).  We now make explicit what those decisions reflect:  the Abbott A. framework governs the due process inquiry where an incompetent defendant is detained due to an inability to post cash bail.

Under Abbott A., 458 Mass. at 37-40, two related limits apply.  First, an incompetent defendant may not be held awaiting trial longer than the reasonable period necessary to determine whether there is a substantial probability that competency will

be attained in the foreseeable future.[7]  See id. at 37.  Second, due process independently prohibits detention for an unreasonable period of time.  See id. at 39.  No bright-line rule governs those inquiries; rather, courts assess the totality of the circumstances, including the length of the detention, the seriousness of the charges, the degree of dangerousness, the likelihood and anticipated time frame of restoration, any contribution by the defendant to prolonged incompetency, and any resulting prejudice.  Id. at 39-40.

Applying the Abbott A. framework here, we conclude that the defendant's detention did not exceed the reasonable period necessary to assess the likelihood of restoration and was not otherwise unreasonable.  See Abbott A., 458 Mass. at 37, 39-40.  See also Jackson, 406 U.S. at 738.  The charges were serious, including allegations that the defendant committed a violent home invasion during which he pointed a firearm at a victim's head and struck multiple people with the weapon.  The home

---

[7] Even where a defendant probably may soon attain competency, Abbott A. further requires continued confinement to be justified by demonstrable progress toward that goal.  See Abbott A., 458 Mass. at 39, citing Jackson, 406 U.S. at 738.  At the time of the detention at issue, there was no indication that the defendant was likely to attain competency.  Nevertheless, because the Commonwealth represented that it would seek a new evaluation in light of the circumstances described below, and because the defendant had been held solely on the challenged bails for only three days as of the time of the single justice's decision, this requirement had not yet been applicable.

invasion charge alone carries a minimum sentence of twenty years in State prison. See G. L. c. 265, § 18C. The defendant also faced subsequent firearm-related charges.

Although the defendant previously had been found incompetent, those findings were approximately four years old at the time of the bail hearing, and the most recent evaluation was more than two years old. Given that passage of time -- together with evaluative observations that the defendant at times exaggerated his deficits -- the earlier opinions had limited probative value regarding future restoration to competency as of the bail hearing. The Commonwealth also represented that it intended to seek a new competency evaluation. Further, by the time of the single justice's decision, the defendant had been held solely on the challenged bail orders for only three days after dismissal of the BMC case.[8] Considering the totality of the circumstances, the detention did not shock the conscience or otherwise violate substantive due process, and the single justice did not err or abuse her discretion in denying relief.

The defendant further argues that the hearing judge and the single justice improperly considered dangerousness when setting

---

[8] Until that point, the defendant also remained in custody on cash bail in the BMC case, originally set at $30,000 and reduced to $15,000 on August 29, 2024, which bail he does not challenge in this appeal.

bail under G. L. c. 276, § 57.  See Brangan v. Commonwealth, 477 Mass. 691, 705, S.C., 478 Mass. 361 (2017) ("a judge may not consider a defendant's alleged dangerousness in setting the amount of bail").  Here, however, any reference to dangerousness arose solely in the course of evaluating the defendant's constitutional claim under Abbott A., which expressly identifies dangerousness as a relevant factor in assessing the reasonableness of detention for purposes of substantive due process.  See Abbott A., 458 Mass. at 39-40.  Nothing in the record supports that dangerousness was relied upon to determine the amount of bail.  There was no error.

Conclusion.  The judgment of the single justice is affirmed.

So ordered.